82 A.3d 1023

COMMONWEALTH of Pennsylvania, Appellee

v.

**Carl P. HANSON, Appellant.**

Supreme Court of Pennsylvania.

Argued May 8, 2012.

Decided Dec. 27, 2013.

Karl Baker, Esq., Philadelphia, Ellen T. Greenlee, Esq., Peter Rosalsky, Esq., Defender Association of Philadelphia, for Carl P. Hanson.

Hugh J. Burns Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice SAYLOR.[1]

This appeal centrally presents questions of statutory construction pertaining to the five-year mandatory minimum sentence attaching to the offense of possession of a controlled substance with intent to deliver ("PWID"), *see* 35 P.S. § 780–113(a)(30), while in possession or control of a firearm. *See* 42 Pa.C.S. § 9712.1(a).

## I. Preliminary Overview

Section 9712.1(a) of the Sentencing Code provides:

**(a) Mandatory sentence.**—Any person who is convicted of [PWID], when at the time of the offense the person or the person's accomplice is in *physical possession or control of a firearm,* whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or *in close proximity to the controlled substance,* shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1(a) (emphasis added).

The appropriate understanding of this provision is a subject of disharmony among recent decisions of the Superior Court. For example, in *Commonwealth v. Stein,* 39 A.3d 365 (Pa.Super.2012), one panel of the intermediate court indicated that Section 9712.1(a) "merely requires that there be a firearm on or near a person involved in the commission of the crime or in close proximity to the drugs in question." *Id.* at 369 (citing *Commonwealth v. Sanes,* 955 A.2d 369, 377 (Pa.Super.2008)). However, in a substantially contemporaneous opinion, an overlapping panel found that the mandatory minimum sentence prescribed by the statute is triggered only upon separate and independent findings of actual or constructive possession by the defendant of a firearm *and* of a close proximity as between the weapon and the controlled substance giving rise to the drug offense. *See Commonwealth v. Person,* 39 A.3d 302, 305 (Pa.Super.2012) (also citing *Sanes,* 955 A.2d at 374).

1. This matter was reassigned to this author.

Presently, we consider the meaning of the terms "control of a firearm" and "close proximity," as they are employed in Section 9712.1(a), including the interrelationship between "control" and the concept of constructive possession as it appears in several of the Superior Court's decisions. We also address the divergence among the Superior Court's decisions concerning whether and to what extent "close proximity" establishes, implies, or is essentially independent of "control." *See Commonwealth v. Hanson*, 611 Pa. 616, 29 A.3d 366 (2011) (*per curiam*).

## II. Background and Arguments

On June 7, 2007, an undercover narcotics officer met with Appellant outside a two-story row house located on North Creighton Street, Philadelphia. There, the officer purchased several packets of crack cocaine from Appellant, who then entered the locked residence using a key.

The following day, officers observed Appellant repeatedly entering the Creighton Street house with the key. During surveillance, no one other than Appellant was seen entering or exiting the premises. Police then executed a search warrant at the property and arrested Appellant on the first floor. On his person, Appellant had some cash and the key he used for entry. A search of the second floor uncovered: (1) from the front bedroom, a cellular telephone, a small electronic scale, and various drug-related paraphernalia; (2) from the middle bedroom, a clear plastic baggie containing fourteen packets of crack cocaine; (3) from the only bathroom in the house, a clear plastic baggie containing PCP; and (4) from the rear bedroom, a handgun loaded with seven live rounds. *See* N.T., July 29, 2008, at 8–12. No drugs or paraphernalia were discovered in the rear bedroom which contained the firearm. *See id.* at 48.

Appellant was charged with PWID, simple possession, *see* 35 P.S. § 780–113(a)(16), possession of drug paraphernalia, *see id.* § 780–113(a)(32), and possession of an instrument of crime, namely, the handgun, *see* 18 Pa.C.S. § 907(a). At a pre-trial conference, Appellant argued that the charge of possession of

an instrument of crime should be quashed, "given [the] lack of nexus between [Appellant] and that weapon and someone else's room." N.T., Jan. 22, 2008, at 2. Over opposition by the Commonwealth, a common pleas judge quashed the charge, without explaining the reasoning underlying such ruling. *See id.* at 3.

Subsequently, before a different judge, Appellant entered an open plea of guilty to PWID.[2] In the course of the plea proceedings, the Commonwealth related the material facts as indicated above, and Appellant affirmed them. *See* N.T., July 29, 2008, at 8–12. Of material significance to the common pleas court's treatment of the mandatory-minimum issue, the Commonwealth asserted that such plea subsumed an admission to possession of all of the drugs, including those located on the second floor of the Creighton Street residence. *See* N.T., July 29, 2008, at 50. Although there does not appear to be any affirmative, record-based accession by Appellant on this point, no contrary representation or objection was advanced on his behalf.[3]

The plea colloquy segued into a sentencing proceeding, in which the Commonwealth pursued imposition of the mandatory minimum sentence under Section 9712.1(a), and the court questioned Appellant and commented concerning his responses. During the course of the proceeding, Appellant indicated that he did not own the Creighton Street property, but he had been given the key by the owner's son, a person who Appellant said he knew only as "K." *See* N.T., July 29, 2008, at 23, 26–27. Appellant also stated that, to the best of his knowledge, no other person had a key to the house, *see id.*, and he was the only person selling drugs from that location, *see id.* at 45. According to Appellant, he was unaware of the firearm's presence in the house, *see id.* at 60–61, and he never ventured onto the second floor, *see id.* at 32.

2. The remaining charges were nolle prossed.

3. In any event, Appellant concedes in his present brief that "he did plead guilty to possessing drugs located within the second floor rooms." Brief for Appellant at 34.

At one point, the presiding judge remarked that the Commonwealth had not developed much detail concerning the closeness in proximity of the handgun and the drugs.[4] In response, the prosecutor asked whether the court wished to hear from police witnesses, to which the judge responded that she did not. *See id.* at 47–48.

Ultimately, the common pleas court imposed the mandatory minimum per Section 9712.1(a). The court concluded that the provision applied, since Appellant admitted he was the only individual selling drugs from the residence. In the court's judgment, such admission, as well as Appellant's deemed concession of his guilt relative to possession of the drugs found on the second floor, rendered all of the items recovered from the house—including the handgun—within Appellant's physical possession or control.[5] The court recognized the potential tension between this conclusion and the previous quashal of the possessory weapons offense, but it declined to attribute any relevance to such dismissal.[6]

Appellant filed post-sentence motions challenging the imposition of the mandatory minimum sentence and maintaining that: he was not in physical possession or control of the firearm; the firearm was not in close proximity to the controlled substances; and he did not have the requisite *mens rea* for purposes of Section 9712.1(a).

**4.** For instance, there is no indication on the record where the drugs and firearm were situated within the respective rooms and whether they were visible or concealed.

**5.** *See* N.T., July 29, 2008, at 45 ("'[A]ll I hear is I was the only one dealing drugs out of that house. Okay. Then everything in that house is now contributable [sic] to him as far as I'm concerned, whether my colleague quashes [the weapons charge] or not."); *accord id.* at 61 ("When he pleads to knowledge and possession of all the drugs, in all the rooms, do you want me to take one room, and say that one room, he never went in that one room, and never knew? I'm not buying it. I mean, it's ridiculous.").

**6.** *See* N.T., July 29, 2008, at 22 ("Don't even perceive to look into the brain of another individual, let alone another judge. He chose to do whatever he did for whatever reason. That is no longer an issue. You're before me. Don't ever try to think of what [another judge] thinks.").

In its denial of relief, the common pleas court's treatment loosely paralleled the requirements discerned by the Superior Court of actual or constructive possession and of close proximity of contraband and weapon. *See Person,* 39 A.3d at 305; *Sanes,* 955 A.2d at 374. However, as to constructive possession, the court merely defined the term, consistent with its use in *Sanes,* as encompassing the ability to exercise conscious control or dominion and the intent to exercise that control, which may be inferred from the totality of the circumstances. *See Commonwealth v. Hanson,* No. CP–51–CR–0011477–2007, slip op. at 4 (C.P.Philadelphia, Oct. 30, 2009) (citing *Sanes,* 955 A.2d at 373). The court, however, did not provide a separate legal analysis concerning constructive possession and close proximity as the *Sanes* panel indicated was necessary, but rather, proceeded to conflate the two inquires. In this regard, the court's analysis proceeded as follows:

> A recent decision by the Pennsylvania Superior Court reversed the trial court and held that drugs were in "close proximity" to the gun and invoked the mandatory minimum sentence enhancement required under § 9712.1. The facts of that case were the drugs were found in a kitchen area, and a non-working firearm was found under a bed in a bedroom. In reversing the trial court, the Superior Court stressed that because the Defendant pled guilty and did not object to the prosecution's recitation of facts, he could not then assert he had no knowledge or possession of those drugs. [7] *Commonwealth v. Zortman,* [985 A.2d 238, 239–40, 243 (Pa.Super.2009), *aff'd on other grounds,* 611 Pa. 22, 23 A.3d 519 (2011) ].[8]

\* \* \*

7. Presumably, the court meant to discuss possession of "the firearm," not "those drugs," since the handgun was the relevant subject in *Zortman.*

8. In point of fact, in *Zortman*—consistent with the distinction some Superior Court panels otherwise have been making between possession (actual or constructive) and close proximity—the panel discussed the defendant's concessions to ownership and access to the firearm before, and entirely separate from, its analysis of proximity. Indeed, the treatment of the proximity requirement in *Zortman* focuses solely on locational concerns. *See Zortman,* 985 A.2d at 244.

Defendant herein pled guilty to all the facts including that he had knowledge of the drugs and the firearm on the second floor.... [⁹] Defendant cannot now after sentencing allege the Commonwealth failed to prove the imputed *mens rea* with regard to the proximity of the firearm to the narcotics as it is moot.[¹⁰]

*Hanson*, No. CP–51–CR–0011477–2007, *slip op.* at 4–5.

On appeal, the Superior Court affirmed the judgment of sentence in a memorandum opinion. *See Commonwealth v. Hanson*, No. 3225 EDA 2008, 6 A.3d 562 (Pa.Super. July 15, 2010) (table). The panel did not, however, apply the earlier construction of Section 9712.1(a), which would require a showing of at least constructive possession and close proximity to support mandatory sentencing. *See Sanes*, 955 A.2d at 374; *accord Person*, 39 A.3d at 305. Rather, the panel took the position that close proximity was merely a means of establishing control, and that Section 9712.1(a) was a strict-liability provision which does not require any particular *mens rea*. *See Hanson*, No. 3225 EDA 2008, slip op. at 8 ("[T]o prove appellant was 'in control of a firearm,' the Commonwealth need only demonstrate that the firearm was in 'close proximity to the controlled substance.' ").[11] The panel also relied upon *Zortman* for the proposition that close proximity may be

**9.** Again, it bears mention, contrary to the common pleas court's assertion, that Appellant consistently denied knowledge of the firearm on the second floor of the Creighton Street property. The court's explanation in this regard appears to entail a very loose (continued ...) extrapolation from its reasoning that, since Appellant conceded that, to his knowledge at least, he was the only person selling drugs from the property, "everything in that house is now contributable [sic] to him." N.T., July 29, 2008, at 45.

**10.** Under the Superior Court construction of Section 9712.1 deriving from *Sanes*, the *mens rea* is associated with constructive possession, not proximity. *See, e.g., Zortman*, 985 A.2d at 244 (analyzing close proximity without reference to *mens rea*); *Sanes*, 955 A.2d at 373 (discussing constructive possession as subsuming "the intent to exercise ... control"). The common pleas court's displacement of the *mens rea* element into the proximity assessment appears to represent another manifestation of its conflation of constructive possession and proximity considerations.

**11.** In this regard, the panel's decision is more consistent with *Stein*, 39 A.3d at 369, than with *Sanes*, 955 A.2d at 377.

established even where drugs and a weapon may be found in separate rooms within a structure. *See id.* at 8 (citing *Zortman*, 985 A.2d at 244). We allowed appeal to address this reasoning, and for the reasons indicated above.

Presently, Appellant advances a position which is consistent (at least on one plane) with the understanding, reflected in several published Superior Court decisions, that "control of a firearm" (or constructive possession per the intermediate court's treatment under the *Sanes* line) and "close proximity" are separate and independent requirements of Section 9712.1(a).[12] However, whereas some intermediate-court decisions attribute a *mens rea* to only one of these prongs (constructive possession), *see, e.g., Sanes,* 955 A.2d at 373, Appellant argues that knowledge elements should attend both control and proximity, in light of the severe consequences of the statute in terms of its evisceration of sentencing-court discretion. Along these lines, Appellant regards Section 9712.1(a) as an "offense for *mens rea* purposes," since it operates to greatly diminish the common pleas courts' sentencing discretion to offenders' substantial detriment. Brief for Appellant at 11.

Further, Appellant advocates a narrow construction of both "control of a firearm" and "close proximity," consistent with the rule of lenity applicable to laws imposing penal sanctions. *See* 1 Pa.C.S. § 1928(b)(1) (requiring strict construction of penal statutes); *accord Commonwealth v. Booth,* 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) (explaining that, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt"). In terms of control, Appellant envisions a requirement that a defendant "knowingly have an immediate and direct physical accessibility to the firearm with the ready capability of obtaining physical possession." Brief for Appellant at 18–19; *see*

12. *See, e.g.,* Brief for Appellant at 13 ("Section 9712.1 always requires that the offender (or accomplice) be in physical possession or control of the firearm, and then lists four additional circumstances in the 'whether' proviso—one of which must *also* be satisfied." (emphasis in original)); *id.* at 10 ("Each of these elements is different—neither is a subset of the other.").

*also id.* at 19 (" 'Control' requires much more than availability in some passive or constructive sense."). The knowledge requirement should pertain, Appellant explains, because control presupposes knowledge, as the courts have recognized in other settings. *See id.* at 25 (citing, *inter alia, Commonwealth v. Rambo*, 488 Pa. 334, 337–39, 412 A.2d 535, 537–38 (1980) (explaining, in the context of an element of a criminal offense, that possession encompasses an exercise of conscious dominion or control); *Commonwealth v. Armstead*, 452 Pa. 49, 51, 305 A.2d 1, 2 (1973) (defining possession of a firearm in terms of "the power of control over the weapon and the intention to exercise this control") (citation omitted)).

In challenging the intermediate-court panel's vision of Section 9712.1(a) as embodying a strict-liability regime centered on proximity alone (and thus requiring no independent assessment of control), Appellant offers several examples to illustrate unreasonableness in such approach:

> [C]onsider a solitary unarmed street level drug dealer who is holding marijuana and sells a packet to an undercover and armed police officer. The marijuana in the possession of the drug dealer would be in "close proximity" to the firearm of the police officer. . . . A non-police example would be a drug trafficker who takes a taxi cab to deliver his goods, and, for self-defense, the taxi cab driver has a firearm in a paper bag on the front seat of the cab.

Brief for Appellant at 15. Such asserted unreasonableness, Appellant posits, serves as a strong indication that the General Assembly did not intend the interpretation. *See generally* 1 Pa.C.S. § 1922(1) (embodying the presumption, in statutory interpretation, that the Legislature does not intend a result that is "absurd, impossible of execution or unreasonable").

Furthermore, although Appellant's arguments parallel *Sanes'* construction in recognizing dual requirements within Section 9712.1(a), Appellant strongly criticizes the court's effective substitution of "constructive possession" for "control." According to Appellant:

Constructive possession would encompass an offender sell-
ing drugs on the street while having a gun visibly resting on
his bed at home, miles—or hundreds of miles—removed.
Section 9712.1 is not directed at such constructive posses-
sion, nor at any non-immediate control.

Brief for Appellant at 19.

As to the "close proximity" requirement, invoking the rule
of lenity, Appellant urges that the firearm and the controlled
substance must be "very near or immediately adjoining each
other such that, by virtue of their mere locations, the former is
part and parcel of trafficking the latter." *Id.* at 26; *see also
id.* at 35 (restating this definition and stressing that it "must
be construed in light of the purpose of the statute—a deter-
rence to use of firearms in drug dealing activity"); *id.* at 10
(discussing "close proximity" in terms of an "intimate associa-
tion"). Here, once again, Appellant strongly criticizes the
*Sanes* decision's approach and rationale.

In this respect, Appellant develops that the *Sanes* panel
adopted a broad approach to "close proximity," borrowed from
caselaw under the Forfeiture Act, 42 Pa.C.S. §§ 6801–6802.
*See Sanes*, 955 A.2d at 374–75; *see also Zortman*, 985 A.2d at
244 (acknowledging that the Superior Court gave "close prox-
imity" "an expansive meaning" in *Sanes* ). Appellant explains,
however, that Section 9712.1(a) and the Forfeiture Act address
different concerns, ascribe different operational roles to "close
proximity," [13] and yield very different consequences, particu-
larly in that Section 9712.1(a) is a penal statute which is to be
strictly construed. *See* 1 Pa.C.S. § 1928(b)(1).[14]

13. Appellant develops that, in the Forfeiture Act, "close proximity"
merely triggers a rebuttable presumption as to the substantive element
of drug derivation of money found in proximity to contraband. *See* 42
Pa.C.S. § 6801(a)(6)(ii). On the other hand, Appellant asserts, in Sec-
tion 9712.1 " 'close proximity' ... is the substantive element itself—if
the firearm and drugs are in close proximity, that element of Section
9712.1 is irrebuttally [sic] established." Brief for Appellant at 28.

14. Throughout the course of his arguments, Appellant invokes various
other principles of statutory construction, including the axiom disfavor-
ing surplusage (in connection with his argument that control and close
proximity must be considered separately), *see* Brief for Appellant at 17,
21; the practice of considering, as an aid in construction, the title of the

Appellant does recognize that "close proximity" is a relative term.[15] Nevertheless, he repeatedly and roundly criticizes the Superior Court's adoption of an expansive interpretation, given that such an approach is irreconcilable with the rule of lenity.

Applying his narrow construction of Section 9712.1(a) to his own circumstances, Appellant contends that the Commonwealth failed to demonstrate that he had control of the handgun found on the second floor of the Creighton Street premises, because the firearm was not immediately and directly accessible to him. *See* Brief for Appellant at 34. Appellant asserts that there was no indication that he had ever been on the second floor of the residence, let alone in the bedroom in which the handgun was discovered. Appellant also argues that any admission of guilt relative to possession of drugs found on the second floor associated with his plea does not advance the Commonwealth's case, since the plea did not involve the firearm, and the drugs were not located in the same room as the handgun. *See id.* Additionally, Appellant highlights that nothing in the record reveals the distance between the upstairs rooms, the linear footage between the drugs and the gun, or where in each room the items were discovered. According to Appellant, "[t]he fact that a firearm is located somewhere within a room that is on the same floor as two other rooms containing drugs is insufficient to establish 'close proximity.' " *Id.* at 35. Thus, Appellant concludes— since in his view the Commonwealth established neither that he controlled the firearm nor that it was in close proximity to

statute (here, "Sentences for certain drug offenses committed *with* firearms," 42 Pa.C.S. § 9712.1 (emphasis added)), *see* 1 Pa.C.S. § 1924; and the maxim of *noscitur a sociis,* which posits that the meaning of a word may be informed by accompanying words, *see, e.g., Mountain Village v. Board of Supervisors,* 582 Pa. 605, 618, 874 A.2d 1, 8–9 (2005). In this last respect, Appellant suggests that the word "control" must be regarded as "distinct from, but informed by and comparable to" the adjacent term "physical possession." Brief for Appellant at 21.

15. He explains, for example:
It can be said, in some sense, that Philadelphia, Pa., and Camden, N.J., are in close proximity to each other because they are only separated by the ½ mile wide Delaware River.
Brief for Appellant at 28.

the controlled substances—Section 9712.1(a) should not have been interposed to restrict the common pleas court's sentencing discretion.

The Commonwealth, from the outset, rejects Appellant's definitions of control and close proximity. It is the Commonwealth's position that the statutory phrase "control of a firearm" simply signifies the ability to "exercise power or influence over" the weapon. *See* Brief for Appellee at 12 (quoting *Commonwealth v. Diodoro*, 601 Pa. 6, 17, 970 A.2d 1100, 1107 (2009) (citation omitted)). With regard to constructive possession, the Commonwealth takes the position this is simply one clear manifestation of control. *See id.* at 15 ("A drug dealer who constructively possesses a firearm, *i.e.*, a narcotics pusher who has both the power to control the gun as well as the intent to exercise that control, is squarely within the ambit of the statute."). Under the Commonwealth's construction, the text of Section 9712.1(a) "simply requires that 'at the time of the offense' the defendant possess or control a firearm, not that the offense be effectuated through the possession or control of a firearm," as Appellant would have it. *Id.* at 16.[16]

In tension with the intermediate-court panel's perspective that Section 9712.1(a) embodies a form of strict liability, however, the Commonwealth agrees with Appellant that the "control" element "necessarily subsumes knowledge of the item controlled." *Id.* at 21. The Commonwealth, however, opposes a distinct inquiry into the defendant's knowledge, as it views this as merely a "redundant evidentiary burden." *Id.* at 21.

As to "close proximity," the Commonwealth favors "a commonsense, case-by-case determination to be made based on the totality of the circumstances." *Id.* at 10; *see also id.* at 26. In this regard, the Commonwealth supports the Superior Court's adoption of rationale from decisions under the Forfei-

16. Thus, with respect to the title of Section 9712.1 ("Sentences for certain drug offenses committed *with* firearms," 42 Pa.C.S. § 9712.1 (emphasis added)), the Commonwealth asserts that the Legislature's use of the word "with" "indicates nothing more than the possession or control of the firearm must be contemporaneous with the drug dealing." Brief for Appellee at 16; *accord Stein*, 39 A.3d at 369.

ture Act. *See id.* at 26–27. Indeed, the Commonwealth believes the Legislature relied on the developed understanding of the in-close-proximity terminology when it inserted the language into Section 9712.1(a). *See id.* at 10 ("At the time the Legislature enacted section 9712.1, the term "in close proximity" had acquired a particular meaning in the law. Numerous cases had held that whether objects were in close proximity was a commonsense, case-by-case determination to be made based on the totality of the circumstances, not merely by reference to the particular distance between the objects."); *see also id.* at 27–28 (citing, *inter alia, Commonwealth v. Giffin,* 407 Pa.Super. 15, 595 A.2d 101, 105 (1991) (finding that money and contraband located in different rooms were nevertheless in close proximity for purpose of forfeiture)). Along these lines, the Commonwealth favors the "expansive interpretation" of "close proximity," which has been applied by the Superior Court. Brief for Appellee at 28 n.5; *accord Zortman,* 985 A.2d at 244; *Commonwealth v. Gutierrez,* 969 A.2d 584, 593 (Pa.Super.2009) (observing that, in *Sanes,* "[w]e gave ['in close proximity'] a very expansive meaning").

Moreover, the Commonwealth highlights that direct and immediate accessibility of a firearm is not necessary for the instrumentality to be used in furtherance of drug-related activity. Rather, the Commonwealth explains, "where a drug dealer has positioned his firearm near his drug stash so that it will be readily available to protect his supply, he is using the gun just as surely as the dealer who has stuffed his weapon in his waistband or has placed it right next to him." Brief for Appellee at 16; *see also id.* at 13 ("Had the General Assembly intended to limit 'control' to only 'immediate and direct physical' control 'with the ready capability of obtaining physical possession', it would have included such language in the statute.").

The Commonwealth also reasons that, simply because Section 9712.1(a) is a penal statute, it does not necessarily follow that the in-close-proximity language must be given its narrowest possible meaning. *See id.* at 29 (quoting *Commonwealth v. Wooten,* 519 Pa. 45, 53, 545 A.2d 876, 880 (1988) ("While

strict construction of penal statutes is required, . . . courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent.")). Indeed, according to the Commonwealth, implementation of Appellant's narrow interpretation of the provision would undermine the Legislature's essential aim to reduce drug-related gun violence, since it would permit drug traffickers to escape the mandatory minimum sentence by simply positioning their firearms in a readily accessible location just outside of the boundaries of a narrowly-defined proximity. *See id.* at 31.

In terms of the interrelationship between control and proximity, the Commonwealth initially rejects Appellant's position—and that reflected in the *Sanes* line of decisions—that control (termed constructive possession in those cases) should be viewed as a requirement separate and apart from close proximity. Rather, the Commonwealth argues, the statute simply offers a refinement of possession or control in the form of four alternative—albeit non-exclusive—sets of circumstances in which a defendant may be deemed to have such possession or control. *See* Brief for Appellee at 10 ("The plain language of section 9712.1 . . . requires that proof that the firearm was visible, concealed about the defendant, within his reach, or in close proximity to the drugs, is sufficient to establish physical possession or control of the gun."). In this regard, the Commonwealth highlights that "possession or control" is conjoined, in Section 9712.1(a), with proximity (as well as several other alternative avenues for maintaining possession or control) by the word "whether," not "and." *See id.* ("Defendant's contention that the alternatives following the word 'whether' in the statute are additional requirements beyond 'physical possession or control' is untenable. The word 'whether' does not mean 'and.' ").

Although the Commonwealth regards close proximity as a means of establishing control, it recognizes there are circumstances in which drugs and a firearm may be closely proximate and yet Section 9712.1(a) will not pertain, such as the policeman and taxi-driver examples offered by Appellant. *See* Brief for Appellee at 24–25 ("The Commonwealth could not

proceed under section 9712.1 where the gun actually belonged to a police officer or cab driver, as these facts would negate the conclusion that the weapon was in the physical possession or control of the suspect."). Thus, at least in some portions of its argument, the Commonwealth does envision a residual role for assessment of "control," even where close proximity has been established.[17] In this regard, the Commonwealth's argument suggests, in substance, that close proximity creates a rebuttable presumption of control, similar to the operation of the Forfeiture Act, *see* 42 Pa.C.S. § 6801(a)(6)(ii), as well as one facet of the federal sentencing guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1), cmt. n.3 (2011) ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."); *see, e.g., United States v. Darwich*, 337 F.3d 645, 665 (6th Cir.2003).

In Appellant's particular circumstances, the Commonwealth argues that he was plainly in control of the firearm found on the second floor of the Creighton Street property, given that: Appellant possessed the only key to the residence; he was the only person observed entering or exiting the house on the date that the gun was seized and the only person inside the residence at that time; the firearm was on the same floor of the house as the drugs that Appellant had admitted to possessing; and drugs were found inside of the only bathroom in the house. The Commonwealth also notes that control is not dependent upon ownership of the property. *See id.* at 35 (quoting *Commonwealth v. Tizer*, 525 Pa. 315, 320, 580 A.2d 305, 307 (1990) ("One need not own premises to actively or

17. The Commonwealth elaborates:

> [U]nder the hypothetical scenarios imagined by the defendant, the offender would be free to adduce evidence at sentencing that the gun was not his, and the court would be free to determine that the statute did not apply. Simply because close proximity between the firearm and the drugs is sufficient to support the inference that the defendant is in physical possession or control of the gun, does not mean that the sentencing court is obliged to draw this inference when confronted with compelling evidence that the gun in fact did not belong to the defendant but rather a third party unaffiliated with him or his drug trafficking.

Brief for Appellee at 25.

constructively participate in criminal enterprises therein.")).
The Commonwealth concludes that, viewing the proofs in the
light most favorable to it, *see id.* at 39 (citing *Commonwealth
v. Meals*, 590 Pa. 110, 119, 912 A.2d 213, 218 (2006)), the
evidence sufficiently demonstrated that the firearm located in
one bedroom was, more likely than not, in close proximity to
the drugs discovered in two other rooms on the same floor of
the residence. Thus, it is the Commonwealth's ultimate posi-
tion that Appellant was in control of the firearm for purposes
of Section 9712.1(a).

In a post-submission communication, to bolster his position
that Section 9712(a) must be regarded as an "offense" for
*mens rea* purposes, Appellant highlights the United States
Supreme Court's recent decision in *Alleyne v. United States*,
570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (overrul-
ing previous precedent to hold that any fact which increases a
mandatory minimum sentence must be treated as an element
of the crime to be submitted to a jury).

## III. Discussion[18]

### A. Control of a Firearm

The litigants' arguments concerning the appropriate under-
standing of "physical possession or control" offer a highly
incisive approach to the subject which parses physical posses-
sion from control and diverges as to just how strict should be
the interpretation of the "control" aspect. It is well recog-
nized, however, that possession and control are closely related;
indeed, possession is frequently defined in terms of control.

18. To the extent that our undertaking, below, involves statutory con-
struction, our review is plenary. *See, e.g., Six L's Packing Co. v.
W.C.A.B. (Williamson)*, 615 Pa. 615, 628–30, 44 A.3d 1148, 1157 (2012).
We observe, nonetheless, that application of Section 9712.1(a)'s re-
quirements to particular controversies entails resolution of mixed ques-
tions of law and fact, as to which a degree of deference is due to the
judgment of the court of original jurisdiction. *See Gentex Corp. v.
W.C.A.B. (Morack)*, 611 Pa. 38, 48 n. 10, 23 A.3d 528, 534 n. 10 (2011).
In terms of the salient facts, we defer to factual findings and credibility
determinations made by courts of original jurisdiction, so long as they
are supported by the record. *See Commonwealth v. Myers*, 554 Pa. 569,
576, 722 A.2d 649, 652 (1998).

*See, e.g., Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983) (defining "constructive possession" as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control."); *cf. State v. Casey,* 346 Or. 54, 203 P.3d 202, 204 (2009) (explaining that "[o]wnership, possession, custody, and control are related and often overlapping concepts."). Notably, the Legislature frequently uses a series of interrelated terms inclusively to capture its intent for individuals to bear responsibility for their knowing intentions and conduct relative to illicit substances or, as here, dangerous weapons with which they may associate such contraband. *See, e.g.,* 35 P.S. § 780–113(a)(8) (prohibiting "[s]elling, dispensing, disposing of or causing to be sold, dispensed or disposed of, or keeping in possession, control or custody, or concealing" controlled substances and other enumerated items, under prescribed circumstances).

█ Here, we do not see the benefit of strictly parsing "possession" from "control" in the first instance. Rather, in line with the Commonwealth's argument, we regard the four sets of circumstances delineated in Section 9712.1(a) ("whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance") as illustrative of what the Legislature meant by "physical possession or control." Plainly, the Assembly contemplated more than just physical possession or physical control, since the example involving an accomplice signifies joint control, and the in-close-proximity scenario encompasses constructive control. *Accord* Brief for Appellee at 13 (asserting that "the statute makes it patently clear that a defendant can be in control of a firearm that is *not* about his person or within his reach, and thus is *not* immediately and directly physically accessible to him." (emphasis in original)).

In this regard, we also differ with Appellant's position that the identified sets of circumstances should be considered separately and independently from the overarching concept of "physical possession or control" with which they are conjoined.

■ For the above reasons, it is clear enough that, in prescribing a mandatory minimum sentence for "physical possession or control" of a firearm in connection with PWID, the Legislature intended to address the actual or constructive exercise of power over a weapon, as the Commonwealth contends. The requirement favored by Appellant—immediate and direct physical accessibility to the firearm—is in tension with the guidance provided on the statute's face.

■ We do agree with Appellant, however, that an overt scienter requirement of "knowing" should attend the definition. While it is possible to exercise a substantial degree of "control" without knowledge (as, for example, a weapon might surreptitiously be slipped into a bag carried by the defendant), the longstanding understanding of constructive possession and/or constructive control incorporates a scienter requirement. *See, e.g., Macolino*, 503 Pa. at 206, 469 A.2d at 134. Consistent with the rule of lenity, we find that such requisite should pertain in the context of mandatory sentencing as well. Indeed, both parties agree that a requirement of "knowing" control is appropriate; our main difference with the Commonwealth's position on this point lies in its assertion that there is no need to make the scienter requirement overt.

■ Accordingly, we hold that, for purposes of Section 9712.1(a), "physical possession or control" means the knowing exercise of power over a weapon, which may be proven through evidence of a direct, physical association between the defendant and the weapon or evidence of constructive control. Constructive control, in this setting, an analogue to constructive possession, entails the ability to exercise a conscious dominion and the intent to do so. *Cf. Macolino*, 503 Pa. at 206, 469 A.2d at 134.[19]

19. The aspects of scienter reflected in the above definitions address the police-officer and taxi-cab examples offered by Appellant. In either scenario as developed by Appellant, there has been no manifestation of an intent to exercise control over the weapon; therefore, in neither scenario should the defendant be at risk of exposure to a mandatory sentence under Section 9712.1(a), absent additional factual circumstances implicating the necessary *mens rea*.

## B. The Statutory Examples

■■■■ As explained, the delineated sets of circumstances within Section 9712.1(a) ("whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance") serve as examples of circumstances in which a finding of "physical possession or control" may be warranted. Contrary to the Commonwealth's perspective, however, we do not regard proof of the identified sets of circumstances as necessarily sufficient to establish "physical possession or control," independent of the requirements for the latter. In this regard, the statute's transition to the examples is too casual and ambiguous, and the examples themselves are too tersely stated, to establish a self-sufficient role. Rather, we regard the examples as serving primarily to convey the Legislature's desire to incorporate concepts of exclusive, joint, and constructive control into Section 9712.1(a). For similar reasons, we also do not believe that the list of examples is intended to be an exclusive one.

■■ A material consequence of this conclusion is that the scienter-related aspects of "physical possession or control" do extend to the examples delineated in Section 9712.1(a). On the other hand, where the circumstances at hand align with one of those examples, although such confluence does not in and of itself suffice to raise a sufficient inference concerning scienter, such alignment may combine with other proofs to establish the necessary mental state.

In terms of the Superior Court's reference to constructive possession, *see, e.g., Sanes,* 955 A.2d at 374, given the essential overlap between this concept and constructive control, the intermediate court's treatment is not wholly inapt. Nevertheless, since Section 9712.1(a) employs the modifier "physical" in connection with "possession," it would be preferable if the intermediate court were to speak in terms of constructive control instead of constructive possession.

## C. In Close Proximity

This brings us to the use, in Section 9712.1(a), of the term "in close proximity." The General Assembly apparently selected the language in light of the common recognition that "[t]he seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation." *United States v. Markovitch*, 442 F.3d 1029, 1032 (7th Cir. 2006) (citation omitted).[20] A main difficulty with the phrase lies in determining how close, within the Legislature's contemplation, is close enough. As other courts have recognized, there is an inherent imprecision. *See, e.g., People v. $111,900, U.S.C.*, 366 Ill.App.3d 21, 303 Ill.Dec. 626, 851 N.E.2d 813, 822 (2006) ("Close proximity should not, and cannot, rationally be defined in precise terms."); *cf. Sanes*, 955 A.2d at 370 (observing that " 'close proximity' does not easily lend itself to precise definition").

In general terms, we agree with those jurisdictions which have defined "in close proximity" as "very near." *Limon v. State*, 285 Ark. 166, 685 S.W.2d 515, 516 (1985); *Jones v. State ex rel. Mississippi Dep't of Pub. Safety*, 607 So.2d 23, 29–30 (Miss.1992). That said, the same jurisdictions also have recognized that the determination, by its nature, requires a case-by-case assessment and should be adjudged according to the totality of the circumstances. *See, e.g., id.* Obviously, the closer a firearm is found to contraband, the stronger the inference of their association. Therefore, given our reasoning above, the farther removed these elements are in location, the greater the necessity for the Commonwealth to produce other evidence to establish constructive control.[21]

**20.** Although the above quotation goes to the association between the firearm and drug trafficking, an overlapping inference pertains to establish the defendant's connection with the weapon, in light of proven association with the nearby contraband.

**21.** On this topic, we differ with Appellant's opposition to discernment of some guidance from decisions addressing close proximity under the Forfeiture Act. To the degree Appellant's argument is premised on the requirement of strict construction in the penal context, we observe that the same is required in the forfeiture setting, *see, e.g., Commonwealth v.*

██ Nevertheless, the Commonwealth's vision of an essential presumption arising from proximity but detached from the defendant's mental state is not supported by the statute. The General Assembly's knowledge of how to create such a presumption is exemplified by the Forfeiture Act. *See* 42 Pa.C.S. § 6801(a)(6)(ii) ("Such money ... found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance[.]").

In all events, to secure the mandatory minimum sentence under Section 9712.1(a), the Commonwealth must establish "physical possession or control" of the subject firearm. Although an inference concerning the necessary scienter may arise from close proximity which, depending on the circumstances, may be strong enough in and of itself to satisfy the Commonwealth's burden of proof by a preponderance of the evidence, we do not find it useful to couch such an inference in terms of a presumption.

██ Finally, while courts considering close proximity for purposes of Section 9712.1(a) should not be unduly restrictive, we agree with Appellant that the Superior Court should not be applying an "expansive" approach, in light of the rule of lenity. Thus, we disapprove of this aspect of *Sanes* and its progeny.[22]

## D. The Superior Court's Disposition

██ The last question presented in our allocatur grant concerns the correctness of the Superior Court's determination that Section 9712.1(a) was applicable. *See Hanson*, 611

*$2,523.48 U.S. Currency*, 538 Pa. 551, 556–57, 649 A.2d 658, 660–61 (1994), as the law disfavors forfeitures, *see Schwartz v. Rockey*, 593 Pa. 536, 556, 932 A.2d 885, 897–98 (2007).

**22.** The dissenting opinion appears to recognize that Section 9712.1(a) is ambiguous; however, it offers no account for role of the application of the rule of lenity in such circumstances. *See* 1 Pa.C.S. § 1928(b)(1) (requiring strict construction of penal statutes); *accord Booth*, 564 Pa. at 234, 766 A.2d at 846 (explaining that, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt").

Pa. at 616, 29 A.3d at 367. Since the intermediate court implemented a theory of strict liability, *see Hanson*, No. 3225 EDA 2008, *slip op.* at 8, which is inconsistent with our construction of Section 9712.1(a), its decision was not correct.[23]

 Further, for several reasons, we decline to proceed further to consider whether the same result should obtain for alternative reasons. *See, e.g., McAdoo Borough v. PLRB*, 506 Pa. 422, 428 n. 5, 485 A.2d 761, 764 n. 5 (1984). First, it is our considered opinion that the Commonwealth did not prove that the drugs and contraband found at the Creighton Street property, separated by walls and an unknown distance, were so "very near" to each other as to raise an inference of constructive control which would serve, in and of itself, to support application of the mandatory minimum sentence.[24] Second, we realize that there is other evidence to suggest constructive control on the part of Appellant, which includes evidence of his exclusive control of the entire premises throughout at least a finite time period, and his concession to criminal liability for possession of drugs located on the second floor of the Creighton Street residence. However, the sentencing court's reference to such factors is cryptic, and its opinion repeatedly circles back to its perception of the facts, which includes an erroneous attribution to Appellant of a concession to knowledge of the handgun's presence on the premises that he simply never made. *See supra* note 9.

 Additionally, the effort to sort through a series of incomplete and, at times, incorrect dispositions by the intermediate and common pleas courts in order to facilitate a final

**23.** The application of strict liability in *Stein*, 39 A.3d at 369, is also disapproved.

**24.** In this regard, we reiterate that the established facts concerning the locations of the drugs and the handgun are general in nature, *see supra* note 4, as the police officers involved in the search of the Creighton Street residence did not testify as to the details. With reference to the prosecutor's inquiry to the presiding judge whether she wished to hear from those officers, we observe that Section 9712.1(c) requires the court to permit reasonable development of an evidentiary record by both the Commonwealth and the defendant. 42 Pa.C.S. § 9712.1(c). It is not the sentencing court's function to advise the prosecutor as to what evidence should be adduced to make the Commonwealth's case.

resolution is the sort of endeavor which often divides this Court. Moreover, where there is doubt in the application of a mandatory sentencing statute, the rule of lenity does favor traditional, individualized sentencing based on the defendant's offenses, record, and particular circumstances. Significantly, upon proper justification, a court undertaking individualized sentencing often may impose an equivalent sentence in any event, the only difference being the discretionary aspect. We do not see that individualized sentencing in close cases—in view of the Legislature's employment of indeterminate concepts in a mandatory sentencing statute—will detract materially from implementation of the legislative efforts to deter the use of weapons in drug-selling ventures.

Finally, prior to the United States Supreme Court's *Alleyne* decision, issued in June of this year, state legislatures were free to delegate fact-finding authority to sentencing judges relative to mandatory minimum sentences. *See McMillan v. Pennsylvania,* 477 U.S. 79, 87–88, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67 (1986) (holding that the Commonwealth could treat visible possession of a firearm as merely a sentencing factor rather than an offense element for purposes of a mandatory minimum sentencing statute, where the relevant statute did not increase the mandatory maximum); *Harris v. United States,* 536 U.S. 545, 568–69, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002) (plurality) (reaffirming *McMillan* and rejecting a constitutional challenge to a similar federal mandatory minimum sentencing provision). However, as Appellant has advised, *Alleyne* overruled those decisions on this salient point. *See Alleyne,* 570 U.S. at ——, 133 S.Ct. at 2163.

Based upon the above series of considerations, we will remand the matter for resentencing, with the admonition that imposition of the mandatory sentence under Section 9712.1(a)—based on a correct legal analysis and supported findings—is not foreclosed. Should the court, however, determine that the Commonwealth has not established, by a preponderance of the evidence, that Appellant was in constructive control of the firearm—subsuming supported findings relative to the aspects of scienter which we have delineated—the court

should implement individualized sentencing, per the usual practices. Furthermore, to the degree to which Appellant may attain recourse to the new *Alleyne* regime consistent with the developed principles of issue presentation and preservation and/or their exceptions, we also do not foreclose that the common pleas court may undertake traditional, individualized sentencing, based on *Alleyne*.[25]

The order of the Superior Court is reversed, and the matter is remanded, via the intermediate court, to the common pleas court for resentencing, consistent with this opinion.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices BAER, TODD and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

The imprecise wording of this statute muddies the legislature's purpose, but I read § 9712.1(a) to require a finding of "physical possession or control" of the firearm, under one of the four enumerated circumstances. The concept of "physical possession or control" is not new or unusual, and the evidence here is sufficient to establish that portion of the proof. It is not just possession of a firearm that triggers the added penalty, however—the crime after all is a drug crime, not a firearm crime. It is undoubtedly proof of a connection, beyond possession or control, between the possessed firearm and the drug crime that makes the statute applicable, a connection established by one of the enumerated circumstances.

The applicable circumstance here is "close proximity," a redundant and tautologically imprecise measurement. If the legislature recognized that the connection between firearms

---

25. Again, this matter was raised and briefed under a scheme controlled by now-overruled United States Supreme Court decisions. In the absence of developed arguments concerning whether and to what extent the new federal constitutional overlay should apply to this case, we decline to apply *Alleyne* outright at this juncture.

and drugs is not established by specific linear measure, such imprecision is understandable. The legislature could easily have said "ten feet" or "20 yards," but it did not—ten feet might show a disconnect in one situation, while 20 yards might be quite proximate in another. The proof required is enough to allow a reasonable fact-finder to say this firearm was in close proximity to these drugs.

As the facts of each case affect that determination, I would not attempt to further define the phrase as does the majority, and I respectfully cannot agree with reading "close proximity" to necessarily mean "very near." *See* Majority Op., at 411, 82 A.3d at 1038. Neither do I agree with the attendant disapproval of *Commonwealth v. Sanes*, 955 A.2d 369, 377 (Pa.Super.2008), and its progeny. *See* Majority Op., at 411–13, 82 A.3d at 1038–39. I would instead attach a general, totality of the circumstances analysis to the "close proximity" inquiry, which would allow trial courts to consider all factors made relevant by the circumstances, rather than deeming some unspecified but insufficient linear distance to preclude further consideration.

Actual distance is of course relevant, but it should not be preclusive of other factors that maybe more relevant in a given case. In cosmic terms, we may say the earth is very near the moon. In a large warehouse processing mass quantities of drugs, an arsenal of firearms used by the dealers but stored in a locker one hundred yards away may be closely proximate, while a matter of a few yards in a house with many occupants might disconnect a firearm from the drugs under the circumstances. If a person from out-of-town phoned appellant from half a mile away to confirm he was on the way to make a buy, could he say he was very near? If he asked if appellant had a firearm, appellant could honestly answer that he did, and it was very near. The concept of nearness depends on the situation, and I find the words in the statute reflect the need for such flexibility. For analytical purposes, the issue is not determined by physical distance alone.

In the present case, I find the evidence of record regarding the specifics of the residence and location of the drugs and firearm, coupled with other evidence of appellant's exclusive

use of the residence to sell drugs and admission to possessing all the drugs located therein, sufficient to find control and close proximity. Thus, I would affirm and not remand; however, understanding that remand has been ordered, I believe the directed inquiry should be whether the drugs and the firearm were in "close proximity," not whether "[a]ppellant was in constructive control of the firearm[.]" *Id.*, at 1040.

For the above reasons, I respectfully dissent.