# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
  :
      v.   : No. 1314 C.D. 2024
  : Submitted: April 10, 2026
$33,420.00 Cash, U.S. Currency   :
  :
Appeal of: Emilio Torres   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                    FILED:  May 28, 2026


Emilio Torres (Torres), representing himself in this matter, appeals from the Court of Common Pleas of Berks County's (trial court) order dated October 30, 2023 (Order), which granted the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture (Forfeiture Petition) of $33,420.00 cash in United States currency (Currency).  After review, we affirm.

## BACKGROUND

On March 27, 2023, the Commonwealth filed its Forfeiture Petition under the provisions of the statute commonly known as the Forfeiture Act.[1]  In its Forfeiture Petition, the Commonwealth sought forfeiture of the Currency the police seized during their execution of a search warrant, which ultimately resulted in Torres's

---

[1] 42 Pa.C.S. §§ 5801-5808.

criminal conviction for possessing with intent to deliver marijuana in violation of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[2]

On October 30, 2023, the trial court held a hearing on the Forfeiture Petition. At the hearing, the Commonwealth called Vice Investigator Josiah Fischer, an investigator with the City of Reading Police Department's Vice and Narcotics Unit (Investigator Fischer). Original Record (O.R.), Notes of Testimony (N.T.), 10/30/23, at 6. Investigator Fischer testified that on November 19, 2021, a Pennsylvania State Parole agent contacted him regarding items located inside a residence at 822 Hampden Boulevard in Reading, Pennsylvania (the Residence). *Id.* at 7. According to Investigator Fischer, Torres rented the Residence and lived in it with his paramour and another individual (the Housemate). *Id*. at 10. Investigator Fischer obtained a search warrant for the Residence and conducted a search. *Id*. When asked what he found during the search, Investigator Fischer stated:

> During the search, we located approximately . . . [five] pounds [two] ounces of suspected marijuana. Three of those pounds were packaged in bulk one-pound quantities, and the rest, if I remember correctly, was quarter-pound quantities, so four ounces packaged. All of that was located on the third floor. We also located a digital scale, functioning digital scale; a money counter.
>
> In the second[-]floor front bedroom, which was determined to be [Torres's] bedroom, was a safe. Inside that safe was the [Currency], . . . a firearm, .22 caliber firearm; identifying documents. Those sorts of things.

*Id*. at 11. Investigator Fischer testified that the identifying documents included a driver's license, mail, and a paystub, all of which belonged to Torres. *Id*.

Regarding the locations of the items inside the Residence, Investigator Fischer explained the Residence had three bedrooms on the second floor. *Id*. at 13. The

---

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144.

police did not find any of the items in the Housemate's bedroom. *Id.* The other two bedrooms, one of which Torres shared with his paramour, were adjoining. *Id.* Those adjoining bedrooms contained the safe with the Currency, the firearm, the identifying documents, the money counter and the digital scale. *Id.* at 13-14. Investigator Fischer stated that outside Torres's bedroom were stairs to the third floor. *Id.* at 14. Investigator Fischer found the marijuana at the top of those stairs on top of a plastic tote, and he found additional marijuana on the third floor. *Id.* at 14. The Commonwealth admitted photographs of the evidence and indicated it had certified records to prove Torres pled guilty to the possession with intent to deliver marijuana charge resulting from this search. *Id.* at 16.

At the hearing, Torres testified he received the Currency from his insurance company for property damage to his cars. *Id.* at 19-20. Torres presented the trial court with evidence of insurance claims for which he and his paramour received sums of money including: $24,430.73 on November 1, 2020; $20,921.62 on July 21, 2021; and $3,515.86 on October 2, 2021. *Id.* at 30. On cross-examination, Torres admitted he used "part of the money" from the insurance settlement to purchase more vehicles, but he did not provide specific amounts or documentation to support this claim. *Id.* at 32. Further, Torres indicated that although he initially deposited the insurance checks into his bank account, he later withdrew the cash and kept it in the safe because of complications with his bank account relating to differing names on his birth certificate, driver's license, and social security card. *Id.* at 32-35. When asked by the trial court whether he "just kept that cash money close to guns and drugs," Torres responded, "[w]ell, yes." *Id.* at 20.

Following the hearing, the trial court granted the Commonwealth's Forfeiture Petition. O.R., Trial Ct. Order, 10/30/23. In its Pa.R.A.P. 1925(a) Opinion (1925(a)

3

Opinion), the trial court stated it did not find Torres's testimony credible, particularly with respect to the disposition of his insurance proceeds. 1925(a) Op. at 4. The trial court found the Currency "to be the fruit of drug dealing to which Torres had earlier pled guilty." *Id*. The trial court explained that during the search of the Residence by the police,

> officers found a .22 caliber firearm and [the Currency] in a safe in the second-floor front bedroom belonging to Torres and his paramour. Officers next found a digital scale and a money counter machine in an adjoining bedroom. On the third floor of the shared Residence, officers also found five pounds, two ounces of marijuana, packaged in progressively smaller packages indicative of distribution.

*Id*. at 8. Accordingly, the trial court found the Commonwealth fulfilled its burden of establishing the Currency was found in close proximity to the drugs and, in light of the testimony and evidence presented by the Commonwealth, the trial court found the Currency to be derived from Torres's sale of controlled substances. *Id*. at 9. The trial court noted Torres's testimony "failed to produce sufficient credible evidence and testimony to [the trial court] to overcome that presumption." *Id*.

Torres now appeals.[3] On appeal, Torres challenges the trial court's grant of the Commonwealth's Forfeiture Petition. Specifically, in his Brief, Torres states his questions involved on appeal as follows:

> (1) DID THE COMMONWEALTH FAIL TO ESTABLISH ITS BURDEN AUTHORIZING FORFEITURE PURSUANT [TO] THE [FORFEITURE ACT], VIOLATING BOTH THE PENNSYLVANIA AND UNITED STATES CONSTITUTIONS?
>
> (2) DID [THE TRIAL COURT] ERR IN ITS DETERMINATION TO GRANT THE COMMONWEALTH'S FORFEITURE PETITION AND ABUSING ITS DISCRETIONARY POWERS WITH [ITS]

---

[3] Initially, Torres appealed to the Pennsylvania Superior Court, which, by order filed October 4, 2024, transferred the matter to this Court pursuant to Pa.R.A.P. 751(a).

4

OWN PERSONALIZED SENSE OF JUSTICE, BIAS AND PREJUDICES AGAINST [TORRES] AND HIS LIFE AND EMPLOYMENT CHOICES?

Torres's Br. at 5 (capitalization in original). In response, the Commonwealth asserts the trial court properly acted within its discretion in finding the Commonwealth proved by a preponderance of the evidence the Currency was subject to forfeiture under the Forfeiture Act. Commonwealth's Br. at 1. Additionally, the Commonwealth contends Torres waived any constitutional claims raised in his brief by failing to properly raise them before the trial court and only raising them for the first time on appeal. *Id.*[4]

## DISCUSSION

This Court reviews an appeal from a forfeiture proceeding to determine whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 (Pa. Cmwlth. 2014). So long as the trial court's findings are supported by substantial evidence, we defer to those findings. *Id*.

Under the Forfeiture Act, the Commonwealth may seek forfeiture of property exchanged for drugs or used or intended to be used to facilitate any violation of the Drug Act. *See* 42 Pa.C.S. § 5802. The Forfeiture Act identifies, in relevant part, the following items subject to forfeiture:

> (A) Money . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the Drug Act], and all proceeds traceable to such an exchange.

---

[4] We do not view Torres's first issue as raising separate constitutional issues. Rather, he argues that if the Commonwealth failed to meet its burden, then his constitutional rights were violated. Accordingly, we decline to find waiver of that issue and do reach the merits.

5

> (B) Money . . . or other things of value used or intended to be used to facilitate any violation of [the Drug Act].

42 Pa.C.S. § 5802(6)(i)(A)-(B).

Where the Commonwealth seeks forfeiture of seized money, it bears the burden of proving, by a preponderance of the evidence, a nexus between the money and a violation of the Drug Act. *Commonwealth v. Burke*, 49 A.3d 542, 546 (Pa. Cmwlth. 2012). A preponderance of the evidence equates to a "more probable than not" standard, *see Commonwealth v. $32,950.00 U.S. Currency*, 634 A.2d 697, 698 n.9 (Pa. Cmwlth. 1993), and the Commonwealth may satisfy its burden by circumstantial evidence. *Commonwealth v. $301,360.00*, 182 A.3d 1091, 1097 (Pa. Cmwlth. 2018). In the forfeiture proceeding, the Commonwealth must prove:

> (1) . . . the money was furnished or intended to be furnished in exchange for a controlled substance, (2) . . . the money represents proceeds traceable to such an exchange, or (3) . . . the money was used or intended to be used to facilitate a violation of the [Drug] Act.

*Commonwealth v. $34,440.00 U.S. Currency*, 174 A.3d 1031, 1039 (Pa. 2017). When money is found in close proximity to controlled substances possessed in violation of the Drug Act, it is presumed to be derived from selling controlled substances. 42 Pa.C.S. § 5802(6)(ii). As held by our Supreme Court, this rebuttable presumption may suffice to satisfy the Commonwealth's burden of demonstrating a nexus between the seized money and drug activity under the Forfeiture Act. *$34,440.00 U.S. Currency*, 174 A.3d at 1041. If the Commonwealth satisfies its burden of proving a substantial nexus between the seized money and illegal drug activity, the burden then shifts to the opposing party to prove: (1) he owns the money, (2) he acquired it lawfully, and (3) he did not use or possess the money for an illegal purpose. *Burke*, 49 A.3d at 546 (citation omitted). This gives

6

the party an opportunity to persuade the court of the money's alternative origin. *$34,440.00 U.S. Currency*, 174 A.3d at 1043-44.

Torres argues the trial court erred by finding the Currency in "close proximity" to the drugs.[5]  We disagree.  When asked by the trial court whether he "just kept that cash money close to guns and drugs," Torres responded, "[w]ell, yes." O.R., N.T., 10/30/23, at 20.  The Commonwealth need not produce evidence directly linking seized property to illegal activity.  *Commonwealth v. $6,425.00 Seized From Esquilin*, 880 A.2d 523, 532-33 (Pa. 2005).  Circumstantial evidence can be used to establish the requisite nexus.  *Id.* (citation omitted).  The trial court can consider the totality of the evidence and draw logical inferences from the evidence presented in determining whether such a nexus exists.  *Esquilin*, 880 A.2d at 534.  Here, during a search of the Residence, which Torres rented, officers found

> a .22 caliber firearm and [the Currency] in a safe in the second-floor front bedroom belonging to Torres and his paramour.  Officers next found a digital scale and a money counter machine in an adjoining bedroom.  On the third floor of the shared Residence, officers also found five pounds, two ounces of marijuana, packaged in progressively smaller packages indicative of distribution.

1925(a) Op. at 8.  Upon hearing the Commonwealth's presented testimony and viewing the photographs, the trial court noted "quite an operation . . . was being

---

[5] In *Commonwealth v. Hanson*, 82 A.3d 1023, 1037-38 (Pa. 2013), the Pennsylvania Supreme Court remarked upon the ambiguity inherent in the phrase "close proximity" when applying a formerly applicable mandatory minimum sentence for a drug trafficking conviction while in possession of, or "close proximity" to, a firearm.  The Court explained: "A main difficulty with the phrase lies in determining how close, within the Legislature's contemplation, is close enough. As other courts have recognized, there is an inherent imprecision." *Id.* at 1037 (citation omitted). The Court indicated, however, that it agreed "with those jurisdictions which have defined 'in close proximity' as 'very near.'" *Id.* at 1038.  Additionally, the Court recognized that the determination requires a case-by-case assessment and should be adjudged according to the totality of the circumstances. *Id.*

7

conducted out of this [R]esidence." O.R., N.T., 10/30/23, at 15. The trial court reasonably inferred, based on the totality of the evidence, that Torres sold drugs out of the Residence. The location of the Currency and the drugs on separate floors of the Residence does not negate their proximity, particularly where the Residence itself functioned as the center for the operation. The presence of the firearm in the safe with the Currency, as well as the cash counter and digital scale in the adjoining bedroom highlight the coordinated nature of the drug activity within the Residence. Given this record, we discern no error in the trial court's determination that the Commonwealth established a substantial nexus between the seized money and illegal drug activity.

Because the trial court determined the Commonwealth satisfied its burden, the burden then shifted to Torres. While Torres testified and offered the trial court an alternative explanation for his possession of the Currency, the trial court rejected his testimony as incredible. Insofar as Torres would have this Court disregard the trial court's credibility determinations and reweigh the evidence in his favor, we cannot do so. *See Lodge v. Robinson Twp. Zoning Hearing Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022) (stating the trial court is the factfinder and the "ultimate judge of credibility and resolves all conflicts in the evidence"). In an appeal, "it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact." *Allegheny Cnty. v. Monzo*, 500 A.2d 1096, 1101 (Pa. 1985). The trial court, as factfinder, is "free . . . to believe all, part, or none of the evidence." *City of Phila., Bd. of Pensions & Ret. v. Clayton*, 987 A.2d 1255, 1262 (Pa. Cmwlth. 2009). Thus, the trial court was not required to accept Torres's account of where the Currency came from.

8

The trial court, properly considering the totality of the evidence and properly drawing logical inferences from the evidence presented, did not err in finding a nexus between the Currency and a violation of the Drug Act. Nor did the trial court err in finding Torres did not possess the Currency for a lawful purpose, sufficient to rebut the presumption of derivation from the sale of controlled substances. Therefore, the trial court properly granted the Commonwealth's Forfeiture Petition.[6]

---

[6] In his Brief, Torres argues the trial court abused its discretion with its "own personalized sense of justice, bias and prejudices." Torres' Br. at 12. However, by failing to raise this issue in his Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b)(1), Torres waived this issue. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Com. v. Schofield*, 888 A.2d 771, 774-75 (Pa. 2005) (noting strict compliance with Pa.R.A.P. 1925(b) guarantees a trial judge's ability to focus on and respond to issues raised by the appellant, which in effect allows for meaningful and effective appellate review). Nevertheless, even if Torres had not waived this issue, we would determine it lacks merit. An abuse of discretion occurs when a trial court misapplies the law, exercises judgment in a way that is manifestly unreasonable, or issues a final result that evidences partiality, prejudice, bias, or ill-will. *Allegheny Cnty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1245 (Pa. Cmwlth. 2009). Based on our review of the record in this matter, we see no evidence that the trial court misapplied the law, had a manifestly unreasonable exercise of judgment, or issued a decision that evidenced any partiality, prejudice, bias, or ill-will. Accordingly, the trial court did not abuse its discretion.

**CONCLUSION**

Substantial evidence supports the trial court's findings, and we discern no error of law or abuse of discretion in its conclusions. Accordingly, we affirm.[7]

_____
STACY WALLACE, Judge

_____

[7] Initially, both the trial court and the Commonwealth asked this Court to affirm the trial court's Order but to remand the matter for the trial court to amend the amount forfeited. *See* 1925(a) Op. at 1 (requesting this Court "affirm [the trial court's Order] granting forfeiture . . . and to remand to [the trial court] for an amended order"); *see also* Commonwealth's Br. at 19 (requesting "this Court issue an opinion affirming the judgment of the trial court granting forfeiture to the Commonwealth but remand the matter for an order reflecting the proper amount to have been forfeited"). Yet, neither the trial court nor the Commonwealth provided an explanation for what they contended to be the correct amount. Turning to the record, regarding the amount of money seized by the Commonwealth, Investigator Fischer testified to finding "a little over $33,000." O.R., N.T., 10/30/23, at 11. This Court issued a limited remand order directing the trial court to provide this Court with the exact amount sought to be forfeited by the Commonwealth. *See* Order 2/25/2026. The trial court held a hearing on March 6, 2026, at which Investigator Fischer testified to seizing $33,420.00, the amount reflected in the trial court's Order. *See* Supplemental Record, at 5. Accordingly, the amount ordered is supported by the record.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1314 C.D. 2024 |
| | : | |
| $33,420.00 Cash, U.S. Currency | : | |
| | : | |
| Appeal of: Emilio Torres | : | |

## **O R D E R**

**AND NOW**, this 28th day of May 2026, the Court of Common Pleas of Berks County's order dated October 30, 2023, is **AFFIRMED**.

_____
STACY WALLACE, Judge