J. E01002/14

2014 PA Super 178

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES NEWMAN, | : | No. 1980 EDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, June 13, 2012,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0000068-2011

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA,
DONOHUE, ALLEN, LAZARUS, MUNDY, AND OLSON, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:**FILED AUGUST 20, 2014**

Appellant brings this appeal challenging the constitutionality of one of Pennsylvania's mandatory minimum sentencing statutes, 42 Pa.C.S.A. § 9712.1, following the United States Supreme Court's holding in ***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151 (2013).  We find that ***Alleyne*** does indicate that the sentencing practice under Section 9712.1 is unconstitutional.  We will, therefore, vacate appellant's judgment of sentence and remand for resentencing.

Following controlled drug buys involving appellant at Apartment No. 2 of the Station Avenue apartment complex in Glenside, police executed a search warrant at that residence.  Police discovered a large quantity of crack cocaine, drug paraphernalia in the form of plastic baggies and digital scales,

and a handgun and bullets under a mattress in a bedroom. The bedroom was located across a hallway from a bathroom where over 60 grams of cocaine were found in the toilet. The distance between the gun and the cocaine was approximately six to eight feet. Appellant and his co-conspirators were arrested and brought to trial.

On February 14, 2012, a jury convicted appellant of two counts of possession with intent to deliver (cocaine) ("PWID"), two counts of simple possession (cocaine), one count of possession of drug paraphernalia, one count of dealing in proceeds of unlawful activities, one count of possessing an instrument of crime, and five counts of criminal conspiracy.[1] On February 23, 2012, the Commonwealth filed a Notice of Intent to Seek Mandatory Sentence under Section 9712.1, which enhances the minimum sentence where a firearm is found on a drug dealer, an accomplice, or in the vicinity of the contraband. On June 13, 2012, the trial court sentenced appellant pursuant to Section 9712.1 to 5 to 15 years' imprisonment on one of the PWID convictions and a concurrent term of 3 to 10 years' imprisonment on one of the conspiracy convictions. On July 3, 2012, the trial court reduced the PWID sentence to 5 to 10 years' imprisonment.

Appellant appealed his conviction to this court. This court affirmed the judgment of sentence on June 12, 2013. On June 17, 2013, just five days later, the United States Supreme Court issued its opinion in **Alleyne**. On

June 25, 2013, appellant filed with this court an application for reconsideration/reargument which we granted for **en banc** reargument. We now address those issues raised upon reargument:

> I. WHAT IS THE APPLICABILITY OF THE UNITED STATES SUPREME COURT'S DECISION IN **ALLEYNE V. UNITED STATES**, ___ U.S. ___, 133 S.CT. 2151 (2013), AND DOES THE DECISION RENDER 42 PA.C.S. § 9712.1, UNCONSTITUTIONAL IN THAT THE MANDATORY MINIMUM STATUTE ALLOWS THE TRIAL JUDGE TO DETERMINE WHETHER THE EVIDENCE TRIGGERS THE APPLICATION OF THE MANDATORY MINIMUM SENTENCE, THEREBY VIOLATING THE APPELLANT'S SIXTH AMENDMENT RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION, AND APPELLANT'S RIGHT TO A TRIAL BY JURY PURSUANT TO ARTICLE I, SECTION IX, OF THE PENNSYLVANIA CONSTITUTION WHICH GUARANTEE THE APPELLANT TO A TRIAL BY JURY AND A DETERMINATION OF GUILT BEYOND A REASONABLE DOUBT BY THAT JURY?
>
> II. DOES **ALLEYNE V. UNITED STATES**, ___ U.S. ___, 133 S.CT. 2151 (2013), APPLY RETROACTIVELY TO THE INSTANT MATTER, IN THAT THIS CASE WAS DECIDED BY THE SUPERIOR COURT ON JUNE 12, 2013, **ALLEYNE** WAS DECIDED JUNE 17, 2013, BUT APPELLANT FILED A TIMELY REQUEST FOR REARGUMENT AND RECONSIDERATION, AND THUS APPELLANT'S JUDGMENT OF SENTENCE IS NOT FINAL?
>
> III. HAS THE CONTROLLING OR DIRECT RELEVANT AUTHORITY RELIED UPON BY THE COURT

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32); 18 Pa.C.S.A. §§ 5111, 907(a), and 903(a)(1), respectively.

> BEEN EXPRESSLY REVERSED, MODIFIED, OVERRULED OR OTHERWISE MATERIALLY AFFECTED DURING THE PENDENCY OF THE MATTER *SUB JUDICE*, WITH NO NOTICE GIVEN TO THE COURT PURSUANT TO PA.R.A.P. 2501(B)?

Appellant's brief at iv.

We begin by addressing appellant's second issue, pertaining to the retroactive application of **Alleyne** to appellant's case, because if **Alleyne** does not apply retroactively, the merits of appellant's remaining arguments are moot. We note in passing that the Commonwealth does not contend that **Alleyne** does not apply retroactively to appellant, and we now find that **Allyene** does apply retroactively.

The United States Supreme Court has held that "[w]hen a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review." **Schriro v. Summerlin**, 542 U.S. 348, 351 (2004), citing **Griffith v. Kentucky**, 479 U.S. 314, 328 (1987). Although this court had already rendered its decision in appellant's appeal at the time **Alleyne** was announced, we retain jurisdiction for 30 days thereafter, to modify or rescind our holding, or grant reargument as we have here, so long as the appellant does not seek allowance of appeal before our supreme court. **See** 42 Pa.C.S.A. § 5505. Moreover, our decision does not become final until 30 days have elapsed and the time for filing a petition for allowance of appeal with our supreme court expires. **See** Pa.R.A.P., Rule 1113(a), 42 Pa.C.S.A. Therefore, appellant's case was still pending on

direct appeal when **Alleyne** was handed down, and the decision may be applied to appellant's case retroactively.[2]   However, there is a further complication that must be addressed before **Alleyne** may be considered.

To be entitled to the retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below:

> [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

**Commonwealth v. Cabeza**, 469 A.2d 146, 148 (Pa. 1983) (emphasis added).

While appellant challenged his mandatory minimum sentence under Section 9712.1 on direct appeal, his issue was not based upon **Alleyne** or upon a similar theory.   Nonetheless, appellant is still entitled to the retroactive application of **Alleyne**.

In **Commonwealth v. Roney**, 866 A.2d 351 (Pa. 2005), **cert. denied**, **Roney v. Pennsylvania**, 546 U.S. 860 (2005), our supreme court reviewed the application of **Apprendi v. New Jersey**, 530 U.S. 466 (2000), to an appellant's sentence where **Apprendi** or a similar theory had not been

---

[2] The Commonwealth concedes that appellant's case was still pending on direct appeal.  (Commonwealth brief at 8.)

preserved below.[3] The court found that "because a challenge to a sentence premised upon **Apprendi** implicates the legality of that sentence, it cannot be waived on appeal." **Roney**, 866 at 359, n.32. Thus, our supreme court went on to examine **Apprendi**'s application and did not find waiver. We find that a challenge to a sentence premised upon **Alleyne** likewise implicates the legality of the sentence and cannot be waived on appeal. Therefore, we find that **Alleyne** may be applied retroactively to appellant.[4] We now turn to the merits of appellant's other issues which ask us to declare Section 9712.1 unconstitutional under **Alleyne**.

We begin by noting the provisions of Section 9712.1 at issue:

> **§ 9712.1. Sentences for certain drug offenses committed with firearms**
>
> **(a)** **Mandatory sentence.**--Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

---

[3] **Apprendi** will be discussed **infra**.

[4] Although not directly on point, another **en banc** panel of this court has applied **Alleyne** retroactively. **See Commonwealth v. Watley**, 81 A.3d 108 (Pa.Super. 2013) (**en banc**), **appeal denied**, ___ A.3d ___, 1033 MAL (Pa. 2014).

> **(c)** **Proof at sentencing.**--Provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9712.1 (in pertinent part).

Under the sentencing scheme of Section 9712.1, possession of a firearm is considered a sentencing factor to be determined by the trial court upon a preponderance of the evidence, and not an element of the underlying crime to be determined by the jury beyond a reasonable doubt. This sort of sentencing scheme was deemed constitutional under a prior ruling of the United States Supreme Court.

In **McMillan v. Pennsylvania**, 477 U.S. 79 (1986), the United States Supreme Court reviewed the constitutionality of another one of Pennsylvania's mandatory minimum sentencing statutes, 42 Pa.C.S.A. § 9712, which imposed a mandatory minimum sentence of five years' imprisonment for the visible possession of a firearm during the commission of certain specified crimes of violence. Like Section 9712.1, Section 9712 provided that the visible possession was not an element of the crime, but

was a sentencing factor to be determined by the trial court upon a preponderance of the evidence. The **McMillan** court ruled that a state could make visible possession of a firearm a sentencing factor rather than an element of the underlying crime, and that the sentencing factor could be proven by merely a preponderance of the evidence:

> The Commonwealth appealed all four cases [involving Section 9712] to the Supreme Court of Pennsylvania. That court consolidated the appeals and unanimously concluded that the Act is consistent with due process. **Commonwealth v. Wright**, 508 Pa. 25, 494 A.2d 354 (1985). Petitioners' principal argument was that visible possession of a firearm is an element of the crimes for which they were being sentenced and thus must be proved beyond a reasonable doubt under **In re Winship**, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and **Mullaney v. Wilbur**, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). After observing that the legislature had expressly provided that visible possession "shall not be an element of the crime," § 9712(b), and that the reasonable-doubt standard "'has always been dependent on how a state defines the offense'" in question, 508 Pa., at 34, 494 A.2d, at 359, quoting **Patterson v. New York**, 432 U.S. 197, 211, n. 12, 97 S.Ct. 2319, 2327, n. 12, 53 L.Ed.2d 281 (1977), the court rejected the claim that the Act effectively creates a new set of upgraded felonies of which visible possession is an "element." Section 9712, which comes into play only after the defendant has been convicted of an enumerated felony, neither provides for an increase in the maximum sentence for such felony nor authorizes a separate sentence; it merely requires a minimum sentence of five years, which may be more or less than the minimum sentence that might otherwise have been imposed. And consistent with **Winship**, **Mullaney**, and **Patterson**, the Act "creates no presumption as to any essential fact and places no burden on the defendant"; it "in no way relieve[s]

the prosecution of its burden of proving guilt." 508 Pa., at 35, 494 A.2d, at 359.

. . . .

Petitioners argue that under the Due Process Clause as interpreted in **Winship** and **Mullaney**, if a State wants to punish visible possession of a firearm it must undertake the burden of proving that fact beyond a reasonable doubt. We disagree. **Winship** held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S., at 364, 90 S.Ct., at 1073. In **Mullaney v. Wilbur**, we held that the Due Process Clause "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." 421 U.S., at 704, 95 S.Ct., at 1892. But in **Patterson**, we rejected the claim that whenever a State links the "severity of punishment" to "the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt. 432 U.S., at 214, 97 S.Ct., at 2329; **see also id.**, at 207, 97 S.Ct., at 2325 (State need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment"). In particular, we upheld against a due process challenge New York's law placing on defendants charged with murder the burden of proving the affirmative defense of extreme emotional disturbance.

**Patterson** stressed that in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive: "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is

charged." *Id.*, at 210, 97 S.Ct., at 2327 (emphasis added).

. . . .

We believe that the present case is controlled by *Patterson*, our most recent pronouncement on this subject, rather than by *Mullaney*. As the Supreme Court of Pennsylvania observed, the Pennsylvania Legislature has expressly provided that visible possession of a firearm is not an element of the crimes enumerated in the mandatory sentencing statute, § 9712(b), but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt. Indeed, the elements of the enumerated offenses, like the maximum permissible penalties for those offenses, were established long before the Mandatory Minimum Sentencing Act was passed. While visible possession might well have been included as an element of the enumerated offenses, Pennsylvania chose not to redefine those offenses in order to so include it, and *Patterson* teaches that we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.

*McMillan*, 477 U.S. at 83-86 (footnote omitted).

It was clear, however, that the *McMillan* decision was influenced by the fact that Pennsylvania's mandatory sentencing scheme affected only the minimum sentence and not the maximum:

The Court in *Mullaney* observed, with respect to the main criminal statute invalidated in that case, that once the State proved the elements which Maine required it to prove beyond a reasonable doubt the defendant faced "a differential in sentencing ranging from a nominal fine to a mandatory life sentence." 421 U.S., at 700, 95 S.Ct., at 1890. In the present case the situation is quite different. Of the offenses

- 10 -

> enumerated in the Act, third-degree murder, robbery as defined in 18 Pa.Cons.Stat. § 3701(a)(1) (1982), kidnaping, rape, and involuntary deviate sexual intercourse are first-degree felonies subjecting the defendant to a maximum of 20 years' imprisonment. § 1103(1). Voluntary manslaughter and aggravated assault as defined in § 2702(a)(1) are felonies of the second degree carrying a maximum sentence of 10 years. § 1103(2). Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. Section 9712 "ups the ante" for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, *cf.* 18 U.S.C. § 2113(d) (providing separate and greater punishment for bank robberies accomplished through "use of a dangerous weapon or device"), but it does not.

*McMillan*, 477 U.S. at 87-88 (footnote omitted).

Fourteen years after handing down *McMillan*, the United States Supreme Court decided that the precepts of *McMillan* did not apply to mandatory sentencing schemes that affected the maximum sentence. In *Apprendi v. New Jersey*, the petitioner fired several shots into the home of an African-American family, who had recently moved into the previously

all-white neighborhood. The petitioner thereafter made a statement indicating that his motivation had been racially based. At the time, New Jersey law included a "hate crime" sentencing enhancement that affected the maximum sentence. The petitioner eventually pleaded guilty, and after a separate sentencing hearing, the trial court determined by a preponderance of the evidence that the petitioner's crimes were racially motivated and that the hate crime enhancement applied. After the New Jersey Supreme Court affirmed, the United States Supreme Court granted **certiorari**.

The **Apprendi** court found that sentencing enhancements that affect the maximum sentence must be determined by a jury beyond a reasonable doubt:

> The question whether Apprendi had a constitutional right to have a jury find such [racial] bias on the basis of proof beyond a reasonable doubt is starkly presented.
>
> Our answer to that question was foreshadowed by our opinion in **Jones v. United States**, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), construing a federal statute. We there noted that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." **Id.**, at 243, n. 6, 119 S.Ct. 1215. The Fourteenth Amendment commands the same answer in this case involving a state statute.
>
> . . . .

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Apprendi*, 530 U.S. at 475-476, 490.

The *Apprendi* court specifically disavowed that it was overruling *McMillan*, but limited *McMillan* to cases that do not involve the imposition of a sentence more severe than the statutory maximum. *Apprendi*, 530 U.S. at 487, n.13. Moreover, the *Apprendi* court clearly explained that it was the New Jersey statute's effect on the maximum sentence that ran it constitutionally afoul:

> That point applies as well to the constitutionally novel and elusive distinction between "elements" and "sentencing factors." *McMillan*, 477 U.S., at 86, 106 S.Ct. 2411 (noting that the sentencing factor-visible possession of a firearm-"might well have been included as an element of the enumerated offenses"). Despite what appears to us the clear "elemental" nature of the factor here, the relevant inquiry is one not of form, but of effect -- does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict? [FN19]

[FN19] This is not to suggest that the term "sentencing factor" is devoid of meaning. The term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense. *See post*, at 2368-2369 (THOMAS, J., concurring) (reviewing the relevant authorities).

. . . .

The preceding discussion should make clear why the State's reliance on *McMillan* is likewise misplaced. The differential in sentence between what Apprendi would have received without the finding of biased purpose and what he could receive with it is not, it is true, as extreme as the difference between a small fine and mandatory life imprisonment. *Mullaney*, 421 U.S., at 700, 95 S.Ct. 1881. But it can hardly be said that the potential doubling of one's sentence-from 10 years to 20-has no more than a nominal effect. Both in terms of absolute years behind bars, and because of the more severe stigma attached, the differential here is unquestionably of constitutional significance. When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as "a tail which wags the dog of the substantive offense." *McMillan*, 477 U.S., at 88, 106 S.Ct. 2411.

*Apprendi*, 530 U.S. at 494, 495.[5]

Following *Apprendi*, the United States Supreme Court made a notable attempt to harmonize *Apprendi* and *McMillan*. In *Harris v. United States*, 536 U.S. 545 (2002), the Court reviewed a federal statute that operated much like the one in *McMillan*, providing greater and greater minimum sentences if, during a crime involving violence or drug trafficking, the actor possessed a firearm, brandished the firearm, or discharged the firearm. Following the petitioner's conviction by a jury, the court found, by a preponderance of the evidence, that the petitioner had brandished a firearm and increased his minimum sentence accordingly.

The *Harris* court first observed that the federal statute does not indicate whether brandishing a firearm is an element of the underlying offense or whether it is merely a sentencing factor, but that it would appear

---

[5] *Apprendi* has hitherto found little application in Pennsylvania because of the indeterminate sentencing scheme used here:

> As a general matter, Pennsylvania's sentencing scheme, with its guidelines and suggested minimum sentences, is "indeterminate, advisory, and guided" in its nature. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1117 (2007). Therefore, in Pennsylvania, a sentence imposed for a given conviction does not implicate *Apprendi* concerns unless that sentence exceeds the applicable statutory maximum.

*Commonwealth v. Gordon*, 942 A.2d 174, 182 (Pa. 2007), *cert. denied*, *Gordon v. Pennsylvania*, 553 U.S. 1024 (2008).

to be the latter. **Harris**, 536 U.S. at 552. In finding that **McMillan** was still sound, the **Harris** court went on to distinguish **McMillan** and **Apprendi**:

> Confident that the statute does just what **McMillan** said it could, we consider petitioner's argument that § 924(c)(1)(A)(ii) is unconstitutional because **McMillan** is no longer sound authority. **Stare decisis** is not an "inexorable command," **Burnet v. Coronado Oil & Gas Co.**, 285 U.S. 393, 405, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting), but the doctrine is "of fundamental importance to the rule of law," **Welch v. Texas Dept. of Highways and Public Transp.**, 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). Even in constitutional cases, in which **stare decisis** concerns are less pronounced, we will not overrule a precedent absent a "special justification." **Arizona v. Rumsey**, 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).
>
> The special justification petitioner offers is our decision in **Apprendi**, which, he says, cannot be reconciled with **McMillan**. **Cf. Ring v. Arizona**, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (overruling **Walton v. Arizona**, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), because "**Walton** and **Apprendi** are irreconcilable"). We do not find the argument convincing. As we shall explain, **McMillan** and **Apprendi** are consistent because there is a fundamental distinction between the factual findings that were at issue in those two cases. **Apprendi** said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime-and thus the domain of the jury-by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding. As **McMillan** recognized, a statute may

> reserve this type of factual finding for the judge without violating the Constitution.

*Harris*, 536 U.S. at 556-557 (plurality).

As noted, on June 17, 2013, the United States Supreme Court announced its decision in *Alleyne v. United States*. The petitioner in *Alleyne* was challenging the same federal sentence enhancing statute as in *Harris*. The petitioner and an accomplice robbed a bank manager at gunpoint. The jury convicted the petitioner and indicated on the verdict slip that he had possessed a firearm during a crime of violence, but did not indicate that he had brandished the weapon. Nonetheless, the District Court found by a preponderance of the evidence that the petitioner had, in fact, brandished the firearm, and increased the minimum sentence accordingly. The Court of Appeals affirmed, citing *Harris*.

The *Alleyne* court directly overruled *Harris*, and by implication, *McMillan* also. The *Alleyne* court found no basis for distinguishing between the floor and the ceiling of the sentencing range and found that raising the floor aggravated the sentence that was imposed just as raising the ceiling did, and that, therefore, any fact that served to aggravate the minimum sentence must be found by a jury beyond a reasonable doubt:

> Consistent with common-law and early American practice, *Apprendi* concluded that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. *Id.*, at 490, 120 S.Ct. 2348 (internal quotation marks omitted); *id.*, at 483, n. 10, 120 S.Ct. 2348 ("[F]acts that expose a

defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense"). We held that the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt. *Id.*, at 484, 120 S.Ct. 2348. While *Harris* limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum.

It is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. *Apprendi*, *supra*, at 490, 120 S.Ct. 2348; *Harris*, 536 U.S., at 575, 582, 122 S.Ct. 2406 (THOMAS, J., dissenting). But for a finding of brandishing, the penalty is five years to life in prison; with a finding of brandishing, the penalty becomes seven years to life. Just as the maximum of life marks the outer boundary of the range, so seven years marks its floor. And because the legally prescribed range is the penalty affixed to the crime, *infra*, this page, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense. *Apprendi*, *supra*, at 501, 120 S.Ct. 2348 (THOMAS, J., concurring); *see also* Bishop § 598, at 360–361 (if "a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations," then those special circumstances must be specified in the indictment (emphasis added)); 1 F. Wharton, Criminal Law § 371, p. 291 (rev. 7th ed. 1874) (similar).

It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. *See Harris*, *supra*, at 569, 122 S.Ct. 2406 (BREYER, J., concurring in part and concurring in judgment) (facts increasing the minimum and facts increasing the maximum cannot be distinguished "in terms of logic"). Indeed, criminal statutes have long specified both the floor and ceiling of sentence

ranges, which is evidence that both define the legally prescribed penalty. *See*, *e.g.*, *supra*, at 2158 – 2159; N.Y. Penal Code §§ 231–232, p. 70 (1882) (punishment for first-degree robbery was 10 to 20 years' imprisonment; second-degree robbery was 5 to 15 years); Va.Code ch. 192, §§ 1–2, p. 787 (2d ed. 1860) (arson committed at night was punishable by 5 to 10 years; arson committed during the day was 3 to 10 years). This historical practice allowed those who violated the law to know, *ex ante*, the contours of the penalty that the legislature affixed to the crime—and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. <u>A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.</u>

Moreover, it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. *Harris*, *supra*, at 579, 122 S.Ct. 2406 (THOMAS, J., dissenting); [*United States v.*] *O'Brien*, 560 U.S. [218], at ––––, 130 S.Ct. 2169 (THOMAS, J., concurring in judgment). Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's "expected punishment has increased as a result of the narrowed range" and "the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish." *Apprendi*, *supra*, at 522, 120 S.Ct. 2348 (THOMAS, J., concurring). Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? *See McMillan*, 477 U.S., at 88, 89, 106 S.Ct. 2411 (twice noting that a mandatory minimum "'ups the ante'" for a criminal defendant); *Harris*, *supra*, at 580, 122 S.Ct. 2406 (THOMAS, J., dissenting). <u>This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.</u>

*Alleyne*, 133 S.Ct. at 2160-2161 (underlining emphasis added).

Thus, in **Alleyne**, the United States Supreme Court finally repudiated the **Apprendi** and **McMillan** maximum sentence/minimum sentence dichotomy. Plainly, Section 9712.1 can no longer pass constitutional muster. It permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs. Under **Alleyne**, the possession of the firearm must be pleaded in the indictment, and must be found by the jury beyond a reasonable doubt before the defendant may be subjected to an increase in the minimum sentence. As that is not the case instantly, we are constrained to vacate appellant's sentence and remand for resentencing without regard for any mandatory minimum sentence prescribed by Section 9712.1.

The Commonwealth puts forward two arguments in response to appellant's argument that his sentence must be vacated and he be resentenced without regard to Section 9712.1. First the Commonwealth argues that the United States Supreme Court has indicated that **Apprendi** based claims (and by implication, **Alleyne** based claims also) are subject to

harmless error analysis.[6]  ***See Washington v. Recuenco***, 548 U.S. 212, 218-222 (2006), adopting the harmless error standard of ***Neder v. United States***, 527 U.S. 1 (1999).

In ***Neder***, the trial court omitted from its jury instructions an element of the crime of which the petitioner was charged and convicted:

> Neder was indicted on, among other things, 9 counts of mail fraud, in violation of 18 U.S.C. § 1341; 9 counts of wire fraud, in violation of § 1343; 12 counts of bank fraud, in violation of § 1344; and 2 counts of filing a false income tax return, in violation of 26 U.S.C. § 7206(1).  The fraud counts charged Neder with devising and executing various schemes to defraud lenders in connection with the land acquisition and development loans, totaling over $40 million.  The tax counts charged Neder with filing false statements of income on his tax returns.  According to the

---

[6] "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." ***Commonwealth v. Rasheed***, 640 A.2d 896, 898 (Pa. 1994); ***Commonwealth v. Story***, 383 A.2d 155 (Pa. 1978).  We have described the proper analysis as follows:

> Harmless error exists if the record demonstrates either:  (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hairston***, 84 A.3d 657, 671-672 (Pa. 2014), quoting, in part, ***Commonwealth v. Hawkins***, 701 A.2d 492, 507 (Pa. 1997), ***cert. denied***, ***Hawkins v. Pennsylvania***, 523 U.S. 1083 (1998).

Government, Neder failed to report more than $1 million in income for 1985 and more than $4 million in income for 1986, both amounts reflecting profits Neder obtained from the fraudulent real estate loans.

In accordance with then-extant Circuit precedent and over Neder's objection, the District Court instructed the jury that, to convict on the tax offenses, it "need not consider" the materiality of any false statements "even though that language is used in the indictment." App. 256. The question of materiality, the court instructed, "is not a question for the jury to decide." **Ibid.** The court gave a similar instruction on bank fraud, **id.**, at 249, and subsequently found, outside the presence of the jury, that the evidence established the materiality of all the false statements at issue, **id.**, at 167. In instructing the jury on mail fraud and wire fraud, the District Court did not include materiality as an element of either offense. **Id.**, at 253–255. Neder again objected to the instruction. The jury convicted Neder of the fraud and tax offenses, and he was sentenced to 147 months' imprisonment, 5 years' supervised release, and $25 million in restitution.

**Neder**, 527 U.S. at 6.

The **Neder** court first decided that a harmless error analysis was appropriate in most constitutional contexts. **Neder**, 527 U.S. at 8. The **Neder** court then found that the failure to instruct the jury was harmless because the evidence establishing materiality was overwhelming:

At trial, the Government introduced evidence that Neder failed to report over $5 million in income from the loans he obtained. The failure to report such substantial income incontrovertibly establishes that Neder's false statements were material to a determination of his income tax liability. The evidence supporting materiality was so overwhelming, in fact, that Neder did not argue to

the jury—and does not argue here—that his false statements of income could be found immaterial. Instead, he defended against the tax charges by arguing that the loan proceeds were not income because he intended to repay the loans, and that he reasonably believed, based on the advice of his accountant and lawyer, that he need not report the proceeds as income. App. 208–211, 235 (closing argument). In this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. We think it beyond cavil here that the error "did not contribute to the verdict obtained."

*Neder*, 527 U.S. at 16-17.

Thus, in *Neder*, the jury made no finding on the element of materiality, but the instruction error was harmless because if the jury had been properly instructed, it would have undoubtedly found materiality because the evidence of materiality was overwhelming. Instantly, the mandatory minimum sentence was imposed because, under Section 9712.1, the trial court found that the firearm was "in close proximity" to the drug contraband. Under *Alleyne*, the element of "in close proximity" would need to be submitted to the jury to make such a finding. The Commonwealth argues that under *Neder*, we may regard the failure here to instruct the jury as to whether the firearm and the drug contraband were "in close proximity" was harmless because the evidence that the firearm and the drug contraband were "in close proximity" was overwhelming and the jury would undoubtedly have reached that result.

We cannot find that the error here was harmless, because the evidence as to the element of "in close proximity" was not necessarily overwhelming. As previously noted, the drug contraband was found in a bathroom. The firearm was found under a mattress in a bedroom across the hallway, and the actual distance between the contraband and the firearm was six to eight feet. Recently, our supreme court discussed at length the meaning of "in close proximity" as it is used in Section 9712.1. **See Commonwealth v. Hanson**, 82 A.3d 1023 (Pa. 2013), generally. The **Hanson** court noted that the concept of "in close proximity" is inherently imprecise and observed the differing conclusions as to its meaning both among the courts of this Commonwealth and among the courts of other jurisdictions. **Hanson**, 82 A.3d at 1037-1038, and otherwise, generally. If learned jurists cannot decide with precision what constitutes "in close proximity," we cannot say with finality that a panel of lay jurors would undoubtedly conclude from the evidence here that the firearm was "in close proximity" to the drug contraband.

The Commonwealth also raises a related argument, citing **Commonwealth v. Sanes**, 955 A.2d 369, 377 (Pa.Super. 2008), **appeal denied**, 972 A.2d 521 (Pa. 2009). The Commonwealth contends that the jury would undoubtedly have found that appellant was in constructive possession of the firearm and that any **Alleyne** error was harmless on this basis also. The Commonwealth's argument implies that constructive

possession of the firearm satisfies the possessory element/sentencing factor of Section 9712.1 under *Sanes*.

*Sanes* did not hold that constructive possession satisfies the possessory element/sentencing factor of Section 9712.1. The constructive possession analysis in *Sanes* pertained to a weapon offense, 18 Pa.C.S.A. § 6105, of which the appellant was also convicted. In point of fact, as to Section 9712.1, *Sanes* held that because there was no evidence that the appellant was in actual physical possession or control of a firearm, or that a firearm was within reach, the Commonwealth had to show that the firearm was in close proximity to the drug contraband. *Sanes* then found that the items were in close proximity.[7] *Sanes* simply did not hold that constructive possession of a firearm satisfied the possessory element/sentencing factor of Section 9712.1.

On the other hand, the *Hanson* court analyzed Section 9712.1 at length in an attempt to determine what constituted possession of a firearm for purposes of Section 9712.1. After extensive legal analysis, the court ultimately derived a concept it coined as "constructive control":

> Accordingly, we hold that, for purposes of Section 9712.1(a), "physical possession or control" means the knowing exercise of power over a weapon, which may be proven through evidence of a direct, physical association between the defendant and the weapon or evidence of constructive control. Constructive control, in this setting, an analogue to

---

[7] Interestingly, the firearm that was found to be in close proximity to the drug contraband in *Sanes* was six to eight feet apart.

> constructive possession, entails the ability to exercise a conscious dominion and the intent to do so.

*Hanson*, 82 A.3d at 1036-1037.[8]

Again, we find that if learned jurists can arrive at the meaning of "possession or control of a firearm" as it is used in Section 9712.1 only after extensive analysis, there is no guarantee that a lay jury will undoubtedly arrive at the same conclusion. This is especially so when operating under legal constructs like constructive possession, which is foreign to lay persons, and who may assume that when a statute requires possession it means only <u>actual</u> possession. Even with instruction from a trial court, we cannot find that the jury would likely reach the same result. Since we find no guarantee that a jury would undoubtedly find under the evidence that appellant possessed the firearm, we cannot find harmless error on this basis either.

The second argument put forward by the Commonwealth contends that if we find Section 9712.1 unconstitutional under *Alleyne*, and that the error was not harmless, then the proper remedy is to remand for the empanelling of a sentencing jury for the determination, beyond a reasonable doubt, as to whether the conditions obtain under the evidence such that a mandatory minimum sentence should be imposed. Without directly arguing the same, the Commonwealth's assertion assumes that Subsection (a) of

---

[8] We note that the *Hanson* court did not address the constitutionality of Section 9712.1, but remanded for resentencing allowing the trial court to address the applicability of *Alleyne*.

Section 9712.1, which sets the predicate for the mandatory minimum sentence, survives constitutional muster, and that only Subsection (c), which directs that the trial court shall determine the predicate of Subsection (a) by a preponderance of the evidence, fails. In other words, the Commonwealth is contending that we may sever and retain those parts of Section 9712.1 that are not constitutionally infirm. This is also the position taken by Judge Mundy in her concurring opinion. We respectfully disagree.[9]

Pennsylvania law provides for the severing of statutes where one part of a statute is found unconstitutional:

---

[9] As noted in **dicta** in **Watley**, Section 9712.1 is no longer constitutionally sound in light of **Alleyne**. We disagree with the characterization by the concurrence that **Watley** noted that <u>only</u> Section 9712.1(c) is unconstitutional. Concurring Opinion at 3. **Watley** did not address the issue of severing Section 9712.1; rather, it merely cataloged various mandatory minimum sentencing provisions of which Section 9712.1(c) happens to be one. **Watley** did not opine that only Section 9712.1(c) is unconstitutional:

> The **Alleyne** decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions FN3 constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.4
>
> 4. **See e.g.**, 42 Pa.C.S. § 9712(c); 42 Pa.C.S. § 9712.1(c); 42 Pa.C.S. § 9713(c); 42 Pa.C.S. § 9718(c); 42 Pa.C.S. § 9719(b); 18 Pa.C.S. § 7508(b); 18 Pa.C.S. § 6317(b).

**Watley**, 81 A.3d at 117 n.4 (footnote 3 omitted).

### § 1925.  Constitutional construction of statutes

The provisions of every statute shall be severable.  If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S.A. § 1925.

We find that Subsections (a) and (c) of Section 9712.1 are essentially and inseparably connected.  Following **Alleyne**, Subsection (a) must be regarded as the elements of the aggravated crime of possessing a firearm while trafficking drugs.  If Subsection (a) is the predicate arm of Section 9712.1, then Subsection (c) is the "enforcement" arm.  Without Subsection (c), there is no mechanism in place to determine whether the predicate of Subsection (a) has been met.

The Commonwealth's suggestion that we remand for a sentencing jury would require this court to manufacture whole cloth a replacement enforcement mechanism for Section 9712.1; in other words, the Commonwealth is asking us to legislate.  We recognize that in the prosecution of capital cases in Pennsylvania, there is a similar, bifurcated

process where the jury first determines guilt in the trial proceeding (the guilt phase) and then weighs aggravating and mitigating factors in the sentencing proceeding (the penalty phase). However, this mechanism was created by the General Assembly and is enshrined in our statutes at 42 Pa.C.S.A. § 9711. We find that it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**. We cannot do so.

Finally, we note that **Alleyne** and the possibility of severance of Section 9712.1 have arisen in several of our courts of common pleas.[10] Although we are not bound by those decisions, we find a review of their analyses salutary:

> Moving forward, the Commonwealth proposes that the mandatory issue of the Defendant's possession of a firearm in connection with his alleged drug offense be submitted on the verdict slip as a special question for the jury.
>
> Undoubtedly, the legislature intended to give defendants who possess firearms in connection with their drug offenses harsher penalties. However, the legislature also intended those penalties to be imposed according to a very specific procedure -- the issue of firearm possession must be decided by the judge, at sentencing, by a preponderance of the evidence. The Commonwealth asks the Court to have the issue of firearm possession decided by a jury, at trial, beyond a reasonable doubt.

---

[10] Under these cases, severing Section 9712.1 has been found to be unworkable and the section has been ruled unconstitutional in its entirety. These cases are currently before the supreme court on direct review.

>The Court recognizes the difficulty **Alleyne** has caused and the creative solution the Commonwealth offers in response. However, we find that the valid provisions of § 9712.1 are so essentially and inseparably connected with § 9712.1(c) that severance is not possible. If the Court severs § 9712.1(c), we are left without a method of finding the facts necessary to apply the mandatory minimum sentence. Right now, the Court can only impose § 9712.1(a)'s mandatory minimum sentence by using an unconstitutional procedure. At best, the Commonwealth's solution would have the court arbitrarily pick which legislative directives to follow while ignoring others. At worst, the Commonwealth asks the Court to essentially rewrite the statute and replace the unconstitutional procedure with a procedure that has not been legislatively or specifically judicially directed. It is clearly the province of the legislature, not this Court, to make such procedural determinations.

**Commonwealth v. Shifler**, No. CP-28-CR-0000263-2013, entered April 21, 2014, slip. op. at 16-17 (Judge Carol L. Van Horn, Franklin County), on appeal at 42 MAP 2014.

>While the Commonwealth's argument that we should simply substitute a trial by jury for the existing language is appealing in its simplicity, the problem is that we find it violates our constitutional principles that underscore our system of government. The overall effect of the Common Pleas decisions which have found the provisions severable is to pick one part of the Legislature's intent in enacting the statute and decide that it is more important than the rest of the Legislature's intent in enacting the statute in the manner it did. Clearly, the [L]egislature in the offending language that provided for a trial by judge and a preponderance of the evidence test intended to dictate the manner in which the facts that would support a mandatory sentence were to be determined. For the Court now to take on that

important role and effectively take it away from the [L]egislature with the stroke of a pen, or to attempt to decide which parts of the statute were more important to the [L]egislature, offends the separation of powers that exist between the branches of government.

***Commonwealth v. Weyant***, No. CP-07-CR-0000568, 574, 583-2013;

***Commonwealth v. Morgan***, No. CP-07-CR-0001029, 1032-2013, entered

June 9, 2014, slip op. at 17 (***en banc***, Blair County) (finding 42 Pa.C.S.A.

§ 9712.1, 18 Pa.C.S.A. § 6317 (drug free school zones), and 18 Pa.C.S.A.

§ 7508 (drug trafficking sentencing) unconstitutional and non-severable), on

appeal at 20-22 WAP 2014 and 23 WAP 2014, respectively.

While the Commonwealth clearly is correct that unconstitutional provisions of a statute may be severed in order to effectuate the legislature's intent in enacting that statute, the undersigned believes that this simply is not possible in the instant situation, where the constitutional and unconstitutional provisions of the mandatory minimum statutes are inextricably interwoven. In order to effectuate the legislature's intent for the imposition of mandatory minimum sentences, the Commonwealth would have us ignore the legislature's clear intent: that the factors triggering such sentences be found by a judge and not a jury; that the defendant need not be informed of the applicability of the mandatory sentence prior to sentencing; and that the applicable standard be one of preponderance of the evidence. The undersigned believes it is for the legislature, and not this court, to make such determinations. Further, and crucially, rather than asking this court simply to "sever" unconstitutional provisions within the statutes, the Commonwealth is essentially asking this court to *rewrite* them, by imposing different burdens of proof and notification than the legislature imposed.

***Commonwealth v. Khalil Brockington***, No. CP-46-CR-0009311-2012;

***Commonwealth v. Khalil A. Blakeney***, No. CP-46-CR-0002521-2013;

***Commonwealth v. William Bates***, No. CP-46-CR-0000139-2013, entered March 21, 2014, slip op. at 4-5 (Judge William J. Furber, Jr., Montgomery County) (from trial court's order denying Commonwealth's motion to amend bills of information to include factual allegations supporting mandatory minimum sentences and finding 42 Pa.C.S.A. § 9712.1, 18 Pa.C.S.A. § 6317, and 18 Pa.C.S.A. § 7508 unconstitutional and non-severable), on appeal at 36 MAP 2014, 37 MAP 2014, and 38 MAP 2014, respectively.

It would appear clear that the very trial courts entrusted with the imposition of mandatory minimum sentences after ***Alleyne*** have found Section 9712.1 as a whole to be no longer workable without legislative guidance.

Accordingly, having found that ***Alleyne v. United States*** renders 42 Pa.C.S.A. § 9712.1 unconstitutional, we will vacate appellant's judgment of sentence and remand for the re-imposition of sentence without consideration of any mandatory minimum sentence provided by Section 9712.1.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Bender, P.J.E., Panella, J., Donohue, J., Allen, J., and Lazarus, J. join.

Mundy, J. files a Concurring Opinion in which Olson, J. joins and Gantman, P.J. concurs in the result.

Gantman, P.J. and Olson, J. concur in the result of the majority opinion.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014