J-S38012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL RESTO | |
| Appellant | No. 2125 MDA 2014 |

Appeal from the Judgment of Sentence of November 24, 2014
In the Court of Common Pleas of Schuylkill County
Criminal Division at No.: CP-54-CR-0001840-2013

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                    **FILED JULY 14, 2015**

Angel Resto appeals his November 24, 2014 judgment of sentence, which was imposed after Resto was convicted by a jury of rape of a child, unlawful contact or communication with a minor, statutory sexual assault, indecent assault, corruption of the morals of a minor, and indecent exposure.[1]  Herein, Resto challenges the sufficiency of the evidence and the legality of his sentence.  We reject his sufficiency challenge, but we conclude that his sentence was illegal.  Hence, we vacate Resto's judgment of sentence, and we remand for resentencing.

The trial court set forth the facts underlying Resto's convictions as follows:

---

[1]  18 Pa.C.S. §§ 3121(c), 6318(a)(1), 3122.1(a)(2), 3126(a)(7), 6301(a)(1)(i), 3127(a).

At trial[,] the victim, KL, testified that she knew [Resto] as "Sketch" and had met him through friends about three to four weeks before the incident giving rise to the charges. During that time[,] she communicated with him by texting. Two weeks before the incident, she saw Resto at the Tamaqua train station. He asked her if she wanted to "chill." She told Resto that she was twelve [years-old.]

On January 4, 2013, KL and a friend were at KL's apartment for a sleep over. KL, who was twelve years[-]old, lived with her mother, but the mother was at work, and the girls were alone. They were texting Resto and inviting him over. He arrived around 7:00 p.m. The girls met him on the front porch and led him up to the apartment.

KL testified that Resto talked to the girls briefly and then told her he wanted to talk to her alone. He grabbed her wrist and led her down a hallway to her sister's bedroom. She testified that she resisted a little, but his grip got tighter. Her friend stayed in the living room doing Facebook.

KL's friend called her back to the living room for help in changing the channel on the television. When KL returned to the bedroom, [Resto] started kissing her and moving his hands over her body. He removed her shorts and underwear. She said she was trying to pull them up, but he was stronger. Resto then threw her on the bed, got on top of her, pulled his pants down, inserted his penis in her vagina and engaged in sexual intercourse. She said that she told him to stop several times, but he only stopped when his cell phone rang. He answered the phone, engaged in a five minute conversation and then resumed having intercourse with her until the phone rang again, at which time he stopped, pulled up his pants and talked on the phone for ten more minutes.

KL got dressed and walked Resto to the door as he was leaving. She noticed there were blood and fluid stains on the mattress where she had been lying. After Resto left, KL told her friend, EN, that she had just had sex with Sketch.

EN's testimony verified that Resto was invited over and went into the bedroom with KL. She said that KL came out of the bedroom to change the music station and then returned to the bedroom. She described KL walking out of the bedroom with Resto, who left right away. KL had blood showing through her pants in her vaginal area and announced that she had sex with Sketch. KL

then took EN into the bedroom, and EN helped KL turn over the mattress to hide the stain.

KL's mother did not find out what happened until May when she read something on KL's Facebook account. It was then that KL gave a statement to the police. Later, KL's mom mentioned to the police that the mattress was still in her home with the stain. They went to the house in September of 2013, and found the mattress standing on its side against the wall with a visible stain. Two segments were cut out and sent to the crime lab for testing along with oral swabs obtained from Resto and KL.

Corporal [Henry] Woods of the Tamaqua Police Department, who took KL's statement, testified that she did not mention being pulled into the bedroom, telling Resto to stop or resisting. He also confirmed that Resto was twenty years[-]old at the time of the events.

A State Police laboratory technician testified that the stains on both mattress segments were blood and seminal fluid. A forensic DNA analyst then confirmed that the sperm fraction of the stains matched [Resto] and that the non-sperm fraction was a mixture. The major part of that mixture was a match for KL. Neither [Resto] nor KL could be excluded as the source of the minor portion. The analyst also testified that as long as the sample was not manipulated to add more DNA, it could remain intact for an indefinite period of time, especially if not exposed to sunlight or rain.

Trial Court Opinion ("T.C.O."), 1/29/2015, at 2-4.

On November 24, 2014, the trial court sentenced Resto to a mandatory minimum ten to twenty years' incarceration on the rape of a child conviction pursuant to 42 Pa.C.S. § 9718(a)(3) (requiring imposition of a mandatory minimum ten-year sentence for an offender convicted of rape of a child pursuant to 18 Pa.C.S. § 3121(c)). The trial court also sentenced Resto to a consecutive term of six to twelve months' incarceration on the unlawful contact with a minor conviction. All other sentences imposed by

the trial court were ordered to run concurrent to the rape sentence. Thus, in the aggregate, Resto was sentenced to ten years and six months to twenty-one years in prison.

On December 12, 2014, Resto filed a notice of appeal. On December 24, 2014, the trial court directed Resto to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 9, 2015, Resto timely complied. On January 29, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Resto raises two questions for our review:

1. Was the evidence sufficient to support convictions on the charges of rape of a child and statutory sexual assault?

2. Was the ten-year mandatory minimum sentence imposed by the trial judge illegal?

Brief for Resto at 3.

In his first issue, Resto challenges the sufficiency of the evidence offered by the Commonwealth to prove him guilty of rape of a child and statutory sexual assault. A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 555 A.2d 1264, 1267 (Pa. 1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences

- 4 -

therefrom upon which, if believed, the fact finder properly could have based its verdict." ***Id.***

Our Supreme Court also has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1236 n.2 (Pa. 2007).

Of all of the charges for which he was convicted, Resto challenges only the sufficiency of the evidence to support his convictions for rape of a child and statutory sexual assault. "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). "[A] person commits [statutory sexual assault,] a felony of the second degree[,] when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person . . . eight years older but less than 11 years older than the complainant." 18 Pa.C.S. § 3122.1(a)(2). Both offenses require proof of sexual intercourse, which is defined by statute as follows: "[i]n addition to its ordinary meaning, [sexual intercourse] includes intercourse per os or per anus, with some penetration however slight; emission is not

required." 18 Pa.C.S. § 3101. Resto challenges the sexual intercourse element of each offense, maintaining that the Commonwealth failed to adduce sufficient evidence that sexual intercourse actually occurred between him and KL because there was no evidence that a rape kit was performed on KL. Resto "claims that absent a rape kit having been performed, no conviction for an offense requiring proof of sexual intercourse is based on sufficient evidence." Brief for Resto at 7.

Resto offers no legal authority in support of his claim that a rape kit is a prerequisite to proof beyond a reasonable doubt that sexual intercourse occurred. Unsurprisingly, Resto offers no such authority exists, and that is because no such authority exists. To satisfy each crime, the Commonwealth need only prove, through direct or circumstantial evidence, that sexual intercourse occurred. A rape kit is but one of many ways in which the Commonwealth may satisfy its burden. It certainly is not the only way, or the required way. Here, the Commonwealth introduced direct testimony from KL that she and Resto engaged in vaginal intercourse. DNA evidence corroborated KL's testimony beyond a reasonable doubt. Viewed in the light most favorable to the Commonwealth, the evidence overwhelmingly established the sexual intercourse element of both rape of a child and statutory sexual assault. No relief is due.

In his second issue, Resto argues that the imposition of the ten-year mandatory minimum sentence by the trial court was illegal. We agree.

Resto was sentenced pursuant to 42 Pa.C.S. § 9718(a)(3), which provides as follows:

> **(a) Mandatory sentence.--**
>
> \* \* \*
>
> (3) A person convicted of the following offenses shall be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S. § 3121(c) and (d)--not less than ten years.
>
> \* \* \*
>
> **(c) Proof at sentencing.--**The provisions of this section shall not be an element of the crime, and notice of the provisions of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S. § 9718(a)(3).

In ***Alleyne v. United States***, 133 S.Ct. 2151 (2013), the United States Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. ***Alleyne***, *supra* at 2163. In ***Commonwealth v. Miller***, 102 A.3d 988 (Pa. Super. 2014), we presented the relevant portion of the ***Alleyne*** Court's rationale as follows:

> ***Alleyne*** is an extension of the Supreme Court's line of cases beginning with ***Apprendi v. New Jersey***, 530 U.S. 466 (2000). In ***Alleyne***, the Court overruled ***Harris v. United States***, 536

- 7 -

U.S. 545 (2002), in which the Court had reached the opposite conclusion, explaining that there is no constitutional distinction between judicial fact[-]finding which raises the minimum sentence and that which raises the maximum sentence.

> It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty. This historical practice allowed those who violated the law to know, *ex ante*, the contours of the penalty that the legislature affixed to the crime—and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.

> Moreover, it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's expected punishment has increased as a result of the narrowed range and the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. Why else would Congress link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? This reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

*Alleyne*, [133 S.Ct.] at 2160-61 (internal quotation marks and citations omitted).

*Miller*, 102 A.3d at 994-95 (citations modified).

In light of the constitutional pronouncement in *Alleyne*, we have systematically been declaring unconstitutional Pennsylvania's mandatory minimum sentencing statutes that permit a trial court, rather than a jury, to

make the critical factual findings for sentencing. *See Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (holding 42 Pa.C.S. § 9712.1, which imposes a mandatory minimum sentence for possessing a firearm in close proximity to narcotics, unconstitutional); *Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. 2014) (holding 42 Pa.C.S. § 9712, pertaining to mandatory minimum sentencing provisions associated with the commission of certain crimes with a firearm, unconstitutional); *Commonwealth v. Cardwell*, 105 A.3d 748, 751 (Pa. Super. 2014) (applying *Alleyne* and recognizing that the mandatory minimum sentences associated with the weight of narcotics possessed by a drug dealer pursuant to 18 Pa.C.S. § 7508 are unconstitutional).

Similarly, in *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014), we considered the constitutionality of § 9718, the statute at issue in the case *sub judice*. In *Wolfe*, the appellant had been sentenced to a mandatory minimum sentence of ten to twenty years pursuant to 42 Pa.C.S. § 9718(a)(1), for his conviction of involuntary deviate sexual intercourse with a person less than sixteen years-old. *Id.* at 802. The subsection implicated the same "proof at sentencing" provision as set forth above. Citing *Alleyne*, *Newman*, and *Valentine*, we held that section 9718 was facially unconstitutional because the elements of the "proof at sentencing" provision required a trial judge, not a jury, to make factual findings by a preponderance of the evidence, and not beyond a reasonable doubt. *Wolfe*, 106 at 805.

Because subsection (a)(3), which was applied in the instant case, implicates the same "proof at sentencing" provision as in **Wolfe**, its application herein was unconstitutional, and illegal. Both the trial court and the Commonwealth maintain that the "proof at sentencing" provision can be severed from the statute, and that, because the jury found all of the elements of rape of a child beyond a reasonable doubt, the mandatory minimum sentence can still be applied constitutionally. However, most recently, our Supreme Court in **Commonwealth v. Hopkins**, 98 MAP 2013, slip op. (Pa. June 15, 2015), considered the severability of the "proof at sentencing" provision of the drug delivery in a school zone mandatory minimum sentence that is set forth at 18 Pa.C.S. § 6317(a). In **Hopkins**, the Commonwealth conceded that the mandatory sentencing provision was unconstitutional pursuant to **Alleyne**, but contended that the "proof of sentencing" provision was severable. Our Supreme Court rejected that argument, and held that the provision could not be severed without the court usurping the role of the legislature and recrafting the relevant portions of section 6317. **Id.** at 23.

Notably, the language of the "proof at sentencing" provision that the Court held to be non-severable in **Hopkins** is nearly identical to the "proof at sentencing" provision contained in 42 Pa.C.S. § 9718. On the authority of **Hopkins**, we reject the trial court's and Commonwealth's position that the mandatory minimum sentence still can be applied without consideration of the "proof at sentencing" provision. As the **Hopkins** Court held, the

- 10 -

provisions are not severable, and it is up to the General Assembly to re-enact the mandatory provision at issue here in a constitutional manner, if it elects to do so.

Presently, Resto was sentenced pursuant to an unconstitutional statute. He must be resentenced. Consequently, we vacate the judgment of sentence, and we remand this case for resentencing without consideration of the mandatory minimum sentencing provision at issue in this case.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/14/2015</u>