J-S21004-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KERWAN LEE HIGHSMITH | : | |
| | : | |
| Appellant | : | No. 1856 WDA 2016 |

Appeal from the Judgment of Sentence November 8, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014397-2015

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                          FILED MAY 21, 2018

Appellant, Kerwan Lee Highsmith, appeals from the judgment of sentence entered on November 8, 2016.  We affirm.

The Commonwealth charged Appellant with persons not to possess a firearm and carrying a firearm without a license.[1]  The following evidence was presented during Appellant's June 27, 2016 bench trial.

City of Pittsburgh Police Officer John Shamlin testified that, in the early morning hours of October 7, 2015, he was on duty and driving a marked patrol car with his partner, Police Officer Gary Lis.  The two were patrolling in the South Side neighborhood of Pittsburgh.  N.T. Trial, 6/27/16, at 12 and 25.  At approximately 1:50 a.m., Officer Shamlin received a police dispatch of shots fired in the area of 22nd and Sarah Street, in the South Side.  Id.  Dispatch

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

reported that a black Kia sedan with a certain license plate number was "involved in the incident." Id. at 13-14 and 26.

Officer Shamlin and his partner drove toward the area of the shooting. Id. at 13. He testified:

> As we turned from Arlington [Avenue] to Josephine Street, we observed a black Kia that was described as being involved in the incident approaching us from the opposite direction on Josephine Street. . . . As [the Kia] was passing me, . . . I looked in my . . . rearview mirror, my side-view mirror, and it appeared to be the same [license] plate that was given to us.

Id. at 13-14.

When Officer Shamlin initially saw the black Kia, the Kia was "[m]aybe a [three] or [four] minute trip down the hill" from the area of the reported shooting. Id. at 13.

The officers made a U-turn and the black Kia vehicle "pulled over on its own." Id. at 14. The officers then pulled up behind the Kia and activated the patrol car's lights and siren. Id. at 14-15.

After the officers activated their lights, the officers waited in their vehicle until backup officers arrived on scene. During this time, Officer Shamlin was able to observe two individuals in the Kia; the individuals were later identified as Appellant (who was sitting in the Kia's passenger seat) and Trevon Garland (who was sitting in the Kia's driver's seat). Id. at 17 and 28. While awaiting backup, Officer Shamlin did not witness either Appellant or Mr. Garland "engage[] in any sort of . . . furtive movement." Id. at 20.

When backup officers arrived on scene, Officers Shamlin and Lis approached the Kia automobile. Id. at 15-16. Officer Lis testified that the officers pulled Appellant and Mr. Garland out of the vehicle and patted them down for weapons; no weapons were found on either individual. Id. at 29. However, Officer Lis testified, a fellow officer called his attention to a firearm that was "tucked behind the back panel of the driver's seat." Id. at 30-31. Specifically, Officer Lis testified, the back panel of the driver's seat "was torn away from the seat . . . [at] the top and side closest to the passenger . . . to where you [c]ould actually see [] the stuffing in the seat;" Officer Lis testified that the firearm was "tucked down in" this area. Id. at 31-32. Further, Officer Lis testified that he could see the firearm sticking out of the seat from his vantage point outside the vehicle. Id. at 58.

The recovered firearm was a 9-millimeter handgun, with one round loaded in the chamber. Officer Lis also recovered a loaded, extended 9-millimeter magazine from the same area as the firearm and one 9-millimeter round from the glove box. Id. at 33. As Officer Lis testified, he asked Appellant and Mr. Garland "whose gun was that in the car." Id. at 53. Appellant and Mr. Garland both denied any knowledge of the weapon. Id.

The firearm was later examined and found to be "in good operating condition." Id. at 63. The firearm was registered to an individual named Christina Stubs; however, Ms. Stubs evaded police attempts to contact her. Id. at 64-65. Moreover, a third person owned the Kia automobile. The Kia automobile "didn't come back as being stolen" and Mr. Garland told Officer Lis

"that he had been using the vehicle with the legitimate owner's permission." Id. at 51-52.

Finally, Officer Lis testified that, on November 18, 2015, Mr. Garland approached him in court and "told me that he wanted to take the gun;" Officer Lis understood this statement to mean that Mr. Garland "wanted to say [that the firearm] was his." Id. at 35-36.

At the conclusion of trial, the court found Appellant guilty of persons not to possess a firearm and carrying a firearm without a license.[2] On November 8, 2016, the trial court sentenced Appellant to serve an aggregate term of 42 to 84 months in prison for his convictions. N.T. Sentencing, 11/8/16, at 7.

Appellant filed a timely notice of appeal, raising a single claim:

> Was the evidence insufficient to sustain the conviction for Counts 1 and 2 because the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] had actual or constructive possession of the gun found hidden in the back of the driver seat of the car in which he was merely a passenger?

Appellant's Brief at 4 (some internal capitalization omitted).

We review Appellant's sufficiency of the evidence challenge under the following standard:

_____

[2] Mr. Garland was Appellant's co-defendant at trial and the trial court also found Mr. Garland guilty of persons not to possess a firearm and carrying a firearm without a license. N.T. Trial, 6/27/16, at 81. We note that, during trial, the Commonwealth introduced evidence demonstrating that neither Appellant nor Mr. Garland had a license to carry a firearm and that both Appellant and Mr. Garland had prior convictions, which preclude them from carrying a firearm. Id. at 67-68 and 69-74.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Brown, 23 A.3d 544, 559-560 (Pa. Super. 2011) (en banc), quoting Commonwealth v. Hutchinson, 947 A.2d 800, 805-806 (Pa. Super. 2008).

On appeal, Appellant claims that the evidence was insufficient to support his convictions because the Commonwealth failed to prove that he possessed the firearm. Specifically, Appellant claims, the Commonwealth failed to prove that he was aware of the gun in the vehicle and, "even if [Appellant were] aware of the hidden gun, the evidence did not establish that he had [the] power and intent to control it." Appellant's Brief at 11-19. These claims fail.

"In [] possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the

contraband." Commonwealth v. Thompson, 428 A.2d 223, 224 (Pa. Super. 1981). Actual possession is proven "by showing . . . [that the contraband was] found on the [defendant's] person." Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the contraband. Id. "Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal [contraband]: the power to control the contraband and the intent to exercise that control." Id.

With respect to the element of "knowledge" in a possessory offense, this Court held:

> an awareness of the presence of the items which [the defendant] was accused of having [is] an essential element of his supposed intent to control. But this knowledge need not be proven by his admission of such knowledge, or by testimony of his associates that he saw these articles. The defendant's knowledge of the presence of these articles may be inferred from all the surrounding circumstances.

Commonwealth v. Gladden, 311 A.2d 711, 712 (Pa. Super. 1973) (en banc) (internal quotations and citations omitted) (some internal capitalization omitted). "Mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." Commonwealth v. Valette, 613 A.2d 548, 551 (Pa. 1992). However, "[t]wo actors may have joint control and equal access and thus both may constructively possess the contraband." Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa. Super. 1996).

Appellant first claims that the evidence was insufficient to support his convictions because the Commonwealth failed to prove that he was aware of the firearm in the vehicle. This argument fails, as it does not view the evidence in the light most favorable to the Commonwealth.

During trial, the Commonwealth presented evidence demonstrating that: the specific Kia automobile in which Appellant was riding as a passenger was involved in a reported shooting; Officers Shamlin and Lis responded to the call of shots-fired and made contact with the vehicle in which Appellant was a passenger approximately three or four minutes away from the area of the reported shooting; the officers recovered a loaded, 9-millimeter handgun and a loaded, extended 9-millimeter magazine from the torn, back panel of the driver's seat; the back panel of the seat was "was torn away from the seat . . . [at] the top and side closest to the passenger;" the firearm was visible from Officer Lis's vantage point outside the vehicle; Officer Lis recovered one 9-millimeter round from the glove box; and, at the scene, Appellant and Mr. Garland both denied knowing that the weapon was present in the vehicle.

Viewing this evidence in the light most favorable to the Commonwealth – and giving the Commonwealth the benefit of all reasonable inferences arising therefrom – it is clear the Commonwealth established that Appellant knew the firearm was in the vehicle. To be sure, under our standard of review: 1) evidence that there was a reported shooting, which involved the specific Kia automobile in which Appellant was riding as a passenger and the later discovery of the 9-millimeter handgun in the Kia establishes that the

- 7 -

individuals in the Kia discharged the firearm and 2) evidence that Officers Shamlin and Lis responded to the shots-fired call and made contact with Appellant's vehicle approximately three or four minutes away from the area of the reported shooting establishes that Appellant was present in the vehicle at the time of the shooting. Therefore, Appellant's first sub-claim on appeal immediately fails, as the evidence was plainly sufficient to prove that Appellant knew the firearm was present in the vehicle.

Second, Appellant claims that, even if the Commonwealth proved he knew the firearm was present in the vehicle, the Commonwealth failed to prove that he had the power and intent to control the firearm. Again, this claim fails because it contradicts our standard of review.

Viewing the evidence in the light most favorable to the Commonwealth demonstrates, first, that the 9-millimeter handgun was found mere inches away from Appellant's body and within his easy reach. Indeed, since the handgun was located behind the driver's seat and "[at] the top and side closest to the passenger," the firearm was even more accessible to Appellant (who merely needed to reach over to grab the firearm) than it was to Mr. Garland (who could only grab the firearm if he turned completely around in his seat).[3] Second, a 9-millimeter round was found in the glove compartment, which was located closest to Appellant. Third, the handgun had recently been fired and

---

[3] Recall that Officers Shamlin and Lis did not observe furtive movements when they detained the Kia and awaited backup.

then stuffed behind the driver's seat and "[at] the top and side closest to the passenger." Finally, neither Appellant nor Mr. Garland owned either the firearm or the vehicle.

Contrary to Appellant's contentions, the Commonwealth did not center its case against him upon his "mere presence" in the automobile. See Appellant's Brief at 16. Rather, the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to prove that the handgun had recently been fired and that Appellant was the one who had "the power to control the contraband and the intent to exercise that control" or, at the very least, that Appellant and Mr. Garland jointly controlled and, thus, constructively possessed the firearm. Put differently, the circumstantial evidence adduced at trial was not so weak and inconclusive that the trial court could not infer either that Appellant stuffed the recently-discharged firearm behind the driver's seat or that the firearm was located behind the driver's seat so that Appellant could have ready access to the firearm. See Commonwealth v. Sanes, 955 A.2d 369 (Pa. Super. 2008) (holding: "two or more individuals can jointly possess the same . . . firearm"), overruled on other grounds by Commonwealth v. Hanson, 82 A.3d 1023 (Pa. 2013); see also Commonwealth v. McClellan, 178 A.3d 874, 879 (Pa. Super. 2018) ("the fact that other family members may have also handled the gun does not preclude [a]ppellant's constructive possession of it, as the constructive possession concept allows for more than one possessor").

Appellant's claim on appeal thus fails.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2018